[No. 12645.    In Bank. — February 3, 1890.]

TIMOTHY PAIGE, RESPONDENT, v. ROCKY FORD CANAL AND IRRIGATION COMPANY, APPEL-LANT.

RIPARIAN RIGHTS — CHANGE OF WATERCOURSE — ACQUIESCENCE — ARTI-FICIAL USE OF CHANNEL. — When a stream is diverted into a new chan-nel, either by natural or artificial causes, so as to affect other riparian owners favorably, and the owner of the land over which it formerly flowed acquiesces in such change until new rights have accrued, or may be pre-sumed to have accrued, such acquiescence is binding, like a public dedica-tion, and the water cannot be lawfully returned to its former channel. But this rule does not apply to a case where the right of way through the natural channel of a creek is purchased as a means of conveying water to be turned in and taken out of such channel by artificial means, or confer the right in such case to divert the natural flow of the stream, on account of acquiescence in such artificial use of the channel. The parties turning such water into the stream cannot divert more than they turn in, and the right of the riparian owner to the natural flow remains the same as before.

ID. — ARTIFICIAL INCREASE OF FLOW. — Water brought into a stream from another source, by artificial means, so as to increase the flow of the stream for the uses of a riparian owner upon his land, is held by an entirely differ-ent claim from that which entitles such owner to the natural flow; but this would not effect the character of the stream, or the right to the water naturally flowing therein.

Id. — Removal of Obstruction to Natural Flow. — The removal of
*débris* from the channel of a natural watercourse, by a party whose object
is, not to use the natural flow of the water, but to use the channel of the
stream for the conduct of waters to be turned in and taken out by arti-
ficial means, will inure to the benefit of a riparian owner of the steam,
though by the deposit of such *débris* the natural flow had been so inter-
fered with that no water reached the lands of such owner except in time
of high water.

Id. — Prescriptive Right to Divert Water — Adverse Claim — Find-
ings — Review on Appeal. — Though findings upon the subject of a
prescriptive right to divert water may not be carefully and clearly ex-
pressed, yet if, reading and construing them all together, their evident
meaning is that appellant maintained a dam and ditch upon the stream
in controversy for more than five years continuously prior to the com-
mencement of the action, but did not maintain the same under any
claim of right adverse to the respondent's right, it follows that such con-
tinuous maintenance of the dam and ditch is no bar to an action to enjoin
the diversion of the watercourse, and a judgment enjoining such diver-
sion will not be reversed for inconsistency of findings.

Appeal from a judgment of the Superior Court of
Tulare County, and from an order denying a new trial.

The facts are stated in the opinion rendered on the
13th of July, 1889.

*Brown & Daggett,* for Appellant.

*Atwell & Bradley,* and *Edward J. Pringle,* for Respond-
ent.

The Court. —We granted a rehearing in this case after
affirmance of the judgment of the superior court, because
we were in doubt whether there was not a fatal conflict
in the findings as to appellant's claim of prescriptive
right to maintain the dam in the south fork of Pack-
wood Creek, and to divert the waters of the creek through
its canal. After the reargument, and a careful re-exam-
ination of the findings, we are satisfied that they are
entirely consistent. They are not so clearly expressed
as they might have been upon one or two points; but
reading them and construing them all together, their
evident meaning is, that, although the appellant main-

tained a dam in the south fork of Packwood Creek for more than five years continuously prior to the commencement of this action, and also maintained its ditch during the same period; it did not maintain such dam or ditch under any claim of right adverse to the respondent's right, and consequently that its continuous maintenance of the dam and ditch was no bar to the action.

We are in all respects satisfied with our former opinion.

Judgment and order affirmed.

The following is the opinion above referred to, rendered in Bank on the 13th of July, 1889:—

WORKS, J.—This is a proceeding to enjoin the construction of a dam across and a diversion of the waters from a certain stream known as Packwood Creek. The complaint, after alleging the corporate capacity of the defendants and the ownership of the plaintiff and his grantors for ten years last past in and to certain real estate described, alleges "that from time immemorial that certain natural watercourse called Packwook Creek has been accustomed to, and did, and does now, flow through said lands, moistening and irrigating the same, and furnishing its waters to the plaintiff and to his grantors for the irrigation of such lands, and for the use of their live-stock; that for the purpose of increasing the flow of the waters of said stream, the plaintiff's grantors, many years since, and long before any wrongful acts of defendant's hereinafter set out, acquired the right to divert, from the St. Johns and Kaweah rivers, two large streams flowing from the Sierra Nevada Mountains, waters into the said Packwood Creek, and acquired the right of way to and the ownership of the bed and channel of said creek, and then, and ever since has, and still does, divert from said streams into the said creek, and thence carry down through the same to the lands of plaintiff aforesaid, for the irrigation of said lands hereinbefore described, a large amount

of water, all of which rights are now the property of plaintiff; that the plaintiff has now growing in and upon the lands aforesaid a large vineyard and a great number of acres of grain, which he is engaged in irrigating with the waters flowing in said creek, and which, without such irrigation, will dry up, die, and become lost and worthless to plaintiff, but which, by irrigation, is of great value; that the defendants have entered upon said stream, Packwood Creek, above plaintiff's said land, and are now engaged in constructing a dam therein, with the avowed purpose of turning the waters thereof, which otherwise would, and of right ought to, flow down to plaintiff's said land out of said creek, and into a ditch constructed by them, and that such entry and construction of such dam is without any right whatever, and is against the protest of the owner of the land through which the said stream runs; that if defendants are permitted to proceed to construct such dam, it will result in immediate and great and irreparable loss and injury to plaintiff, result in the loss of his vines and crops, and that such loss and injury will not be and is not susceptible of computation or determination in an action at law."

The defendants in their answer deny all of the material allegations of the complaint, and by way of a special defense allege, in substance, that certain of its predecessors and grantors acquired the right to divert and appropriate waters from St. Johns River, and to transfer the same to the Kaweah River, referred to in the complaint, which rights were then owned by said defendants, and that it obtained from said parties the right to use a portion of the waters so appropriated and conveyed by them into the Kaweah River from said St. Johns River aforesaid, which rights said corporation still owns. "That prior to the year A. D. 1887, said Packwood Creek united with and formed a branch of said Kaweah River; that during the winter season of the year 1867–68, by reason of the heavy freshets, the flood and

rains, which then occurred, the bed and channel of said Packwood Creek, for the distance of about one mile, commencing at the place where said creek united with said Kaweah River, became and were filled up with earth and *débris*, deposited therein by the action of said freshets and floods, and by reason thereof the water then and thereafter ceased to flow through the channel of said Packwood Creek, and said Packwood Creek then ceased to have, and ever since has ceased to have, any natural source of supply of water."

It is further avered, in substance, that while said Packwood Creek was so obstructed, the corporation defendant informed the grantors of the plaintiff, who then possessed all the rights and privileges of turning and conveying water through the channel of said Packwood Creek, that said corporation desired and intended to obtain from the owners of the land through which that portion of the channel of said Packwood Creek above referred to ran, the right to enter upon said portion of said channel, which was filled up as aforesaid, and remove the earth and *débris* therefrom, and appropriate and use the channel for the purpose of conveying water from the Kaweah River through said channel, and by means of a dam convey said water from said channel through a ditch to lands in the vicinity of Tulare City, in said county; and that said grantors of the plaintiff, with full and complete knowledge of their rights in the premises, and knowing that the defendant would have to expend large sums of money in order to remove said earth and *débris* from said channel, and construct said dam, for the purpose of deceiving said corporation defendant, and with intent to induce it to perform labor and expend large sums of money in digging out and removing from the said channel of Packwood Creek the earth and *débris* deposited therein as aforesaid, plaintiff's said grantor declared, stated to, and informed said corporation defendant that he did not claim, or intend

to claim or use, said channel of Packwood Creek, or the
waters turned or conveyed therein by said corporation
defendant, and that defendant could appropriate and
use said channel for the purpose of conveying water as
aforesaid; that, acting upon said statements, the defend-
ant in good faith entered upon that portion of the chan-
nel of said alleged Packwood Creek which had been and
was filled up with earth and *débris* as aforesaid, and
with the knowledge and acquiescence of plaintiff's said
grantor, and by means of labor performed at great cost
and expense of time and money, removed all earth, *dé-
bris*, and obstructions therefrom, and appropriated to
its own use said channel for the purpose of conveying
water from said Kaweah River, and turned and conveyed
therein water from said Kaweah River, and at great cost
and expense constructed a dam in the channel of said
Packwood Creek, being the same dam complained of in
said complaint, and at great cost and expense dug a
ditch in said channel, immediately above said dam, to
the vicinity of Tulare City, in said county, where said
waters, diverted from said Kaweah River, through said
channel, were and are by means of said dam and ditch
conveyed and used for the purposes of irrigation. "That
during the time said labor of removing said obstructions,
earth, and *débris*, and of building said dam and ditch,
was being performed, and said sum of money expended
for the same, plaintiff's said grantor knew of said labor
being performed and said money being expended, and
did not object to the acts of said corporation defendant
in that behalf, and did not claim, or pretend to claim,
that any of said acts were interfering with, or would in-
terfere with, or injure any of his rights to the channel
of said creek, or the waters conveyed therein; and that
if said obstructions, earth, and *débris* had not been re-
moved from the channel of said alleged creek in the
manner and to the extent they were removed, as afore-
said, no water whatever could or would flow from said

Kaweah River, or from any other source, into said creek, at ordinary stages of water, above the place where said corporation had placed its said dam and constructed its said ditch."

It is further averred that the defendant corporation has been in the notorious, exclusive, peaceable, and continuous possession of said dam and ditch, and of said channel above said dam, adversely to the plaintiff and his grantors, more than five years immediately preceding the filing of said complaint, under a claim of right adverse to the plaintiff and his grantors, and has, during all of said time, maintained said dam adverse to the plaintiff and his grantors, and during all of said time diverted said water by means of said ditch, adverse to the plaintiff and his grantors.

The court, after finding the corporate capacity of the defendant, the ownership of the property, as alleged in the complaint, finds, in substance, that from time immemorial down to the year 1868, a well-defined, natural watercourse, known as Packwood Creek, ran through the lands of the plaintiff, and irrigated his lands and furnished water for his live-stock and that of his grantors; that in the spring of 1868, by an unusual flood, the head of the creek became, by the action of the waters, so filled up with *débris* and sand that but little water ran into the creek, not sufficient to reach the lands of the plaintiff and his grantors, and the same ceased to be and was no longer a natural watercourse through said lands of plaintiff; that from the year 1868 down to the spring of 1875 Packwood Creek was a water channel into which and down which water ran in times of high water, but no water in its natural flow which entered into said creek reached the land of plaintiff aforesaid; that in the year 1875 plaintiff's grantors turned a large amount of water from a stream known as the St. Johns River down into the Kaweah River, so as to bring it down to said creek, and thence through the

creek to the lands of the plaintiff, and acquired from the
owners of the land through which they turned the water
the right so to do, and also acquired, from the owners of
the land through which said creek ran, the right to use
the channel thereof for the purpose of conducting the
water to said lands, where they used it for irrigation
and for their live-stock to drink; that plaintiff's gran-
tors thereupon constructed a cut leading from the St.
Johns River into the Kaweah River, which flowed down
to and furnished water to Packwood Creek, and con-
structed a cut leading from Visalia Creek to Packwood
Creek, and cleaned out said creek so it would carry all
the waters which they had turned into said creek, and
the waters which came in their natural flow onto plain-
tiff's land; and said waters flowed down and through the
plaintiff's said lands in the channel of Packwood Creek,
and were used by the plaintiff and his grantors; that,
after the plaintiff and his grantors had so acquired the
right to use the channel of said creek, and had so used
it, the defendant, in the winter of 1875 and 1876, con-
structed from time to time dams in the north channel
of said creek, and thereby turned away from said chan-
nel, by means of the dam, into the defendants' ditch, the
waters which the plaintiff and his grantors had turned
therein, which dams were in each of said years torn
down by the plaintiff's grantors, and rebuilt by the
defendant, and that the defendant did not, at any time,
turn any water into the channel of said creek.

After further finding the use made of the water by
the plaintiff, and that the diversion thereof would cause
him great, immediate, and irreparable injury, the court
finds that the defendants notified the grantors of the
plaintiff of their intention to clear out the channel of
Packwood Creek, and to construct the dam as aforesaid,
but finds expressly that the plaintiff's grantors gave the
defendants the privilege of turning out whatever water
it turned into said channel, and no more; and that the

defendants never at any time turned any water into said creek after the year 1876, and that "neither the plaintiff nor his grantors ever induced said defendant to expend any money or do any work on the channel of said creek, nor ever informed the defendants that he, or they, did not claim, or intend to claim and use, the channel of said creek; and the only right which the defendant ever had to construct or maintain any dam in either of the channels of said creek was to turn out such water as it turned in, and the defendant, as aforesaid, never turned any water into said creek, but the plaintiff's grantors, in the years 1877, 1878, and 1879, tore up the dams and obstructions placed in the north channel of said creek by the defendant, so as to let the water flow down to plaintiff's land."

The court further finds that the corporation did expend twenty thousand dollars in cleaning out the head of the channel and constructing its dams, and that the plaintiff's grantors knew of the expenditure of the money, but that the same was done under the aforesaid agreement as to the amount of water to be taken from the channel.

The court found against the claim of the defendants that they had been in adverse possession of the channel and ditch for the term of five years.

The court further finds that at the time the action was brought the defendant corporation was engaged in reconstructing its dam, the same having been removed by the plaintiff, the effect of which dam was to turn away from said creek into defendant's ditch the waters which plaintiff and his grantors had turned therein, as well as the waters which came therein in their natural flow.

As conclusions of law the court finds "that the construction or maintenance of any dam in the channel of Packwood Creek by defendant is without right, and will inevitably work great and continuous injury to plaintiff,

not susceptible of compensation in any action at law, and create endless litigation"; and judgment was rendered for the plaintiff accordingly.

A motion for a new trial was made by the defendants, and denied, and the defendants appeal.

The first contention of the appellants is, that after the year 1868 the creek in question ceased to be a natural watercourse, and that from that time the natural flow of the water therein did not reach the plaintiff's lands, and that, therefore, no right of his was interfered with by their action. The evidence tends to show, and the court finds, that, prior to the year 1868, this creek was a natural watercourse, and that the waters flowed therein onto the plaintiff's lands, but that in said year, by an extraordinary freshet, the head of the stream was obstructed by *débris*, and that from that time on only a small quantity of water flowed naturally in the stream, not in sufficient quantity to reach the plaintiff's lands, but that water did reach his lands through the channel of the stream in extreme high water.

In the case of riparian owners the rule has been held to be, that "when a stream flowing through a person's land is diverted into a new channel, either artificially or by a sudden flow affecting the rights of other riparian proprietors favorably, and the owner acquiesces in the new state of the stream for so long a time that new rights accrue, or may be presumed to have accrued, such acquiescence is binding, like a public dedication, and the stream cannot be lawfully turned to its former channel." (Gould on Waters, sec. 159; *Woodbury* v. *Short*, 17 Vt. 386; 44 Am. Dec. 344.)

So where the owner of the land has changed the course of the stream so as to affect other riparian proprietors favorably, and acquiesces therein for a sufficient length of time, he cannot claim the right to change the flow of the water to the detriment of such other riparian owners. (*Ford* v. *Whitlock*, 27 Vt. 265.)

But it seems to us that this rule, which applies to riparian owners, has no application to a case like this, where the defendants have entered upon the stream and claim to appropriate and divert the waters therefrom under the circumstances shown by the pleadings and the evidence. The fact that the plaintiff's grantors had purchased the right of way through the channel of the creek to flow their waters brought to the same by artificial means did not, as claimed by the appellant, show that the stream was not a natural watercourse. The evidence tends to show that the channel of the stream was well defined, and that the waters had formerly flowed therein naturally down to the plaintiff's land, and that it was only prevented from so flowing by the obstruction above stated.

The right to such water as was brought into the stream by the plaintiff's grantors might be, and we think was, held by an entirely different claim than that which entitled them to the natural flow of the water. (*Hoffman* v. *Stone*, 7 Cal. 46; *Butte Canal Co.* v. *Vaughn*, 11 Cal. 143; 70 Am. Dec. 769; *Parks Canal Irrigation Co.* v. *Hoyt*, 57 Cal. 46; *Creighton* v. *Kaweah C. & I. Co.*, 67 Cal. 221.) But this would not affect the character of the stream or the right to the water naturally flowing therein. Beside, respondent does not rely in his complaint solely on the ground that this is a natural watercourse, but on the further ground, which is found in his favor, that the flow of the water was increased by artificial means, the right to which was purchased and used by his grantors, and thereby, in connection with the natural flow of the stream, the water was carried onto his lands.

This being a stream in which water flowed naturally, the fact that the defendants had turned other waters into it would not entitle them to take out more than they turned in. (*Wilcox* v. *Hausch*, 64 Cal. 461.) The right of the riparian owner to the natural flow of the water, under the circumstances, remained the same as before.

This case was here before, when it was held that the findings were too indefinite and uncertain to sustain the judgment, and the case was reversed on that ground. (*Paige* v. *Rocky Ford C. & I. Co.*, 4 Pac. Rep. 1152.) This same point, and the further one that the findings are contradictory, are urged now, but we think the findings are sufficiently definite, and that they are not so contradictory as to warrant a reversal on that ground.

It is further contended that the evidence is insufficient to sustain some of the findings. Counsel for appellants review the evidence in their brief, and argue this point at length and with great earnestness, but the evidence on the several points discussed is clearly in conflict, to such an extent as must preclude us from entering upon the question. In pressing their views upon us as to some of these findings, the appellant contends that the respondent, like the appellant, was a mere appropriator of the waters flowing in the stream, and not a riparian owner; but the evidence sufficiently shows to the contrary as to a part of the waters of the stream, and, as the evidence shows and the court finds that, although the natural flow of the water did not reach the respondent's lands, it does appear that the waters did reach his lands in high water, and that the natural flow of the water to his place was only prevented by the obstruction at the head of the stream. There is evidence upon which the court was warranted in finding that the appellant expended its money in removing this obstruction, opening up the channel and constructing its dam, *not for the purpose of using the natural flow of the water, but as a channel through which it might conduct the waters turned into it by the appellant.*

This being the case, the fact that the *natural* flow of water was *increased* by the removal of the obstruction, whereby the same would or might flow onto the respondent's lands, must be held to have accrued to *his* benefit, and not to that of the appellant, because it had

no right to the natural flow of the water under such circumstances. The very fact that the removal of the obstruction would increase the natural flow of the water may have been an inducement for the owners of the land to consent to the use of the channel by the appellant for the purpose of flowing other waters therein.

The same evidence and finding that the expenditures were made by the appellant for the privilege of flowing water turned by them into the channel of the stream, and not for the right to use the waters naturally flowing therein, or brought into the same by the respondent, show conclusively that the claim and holding of the appellant was not adverse as to any right asserted in this action.

For the same reasons, the claim that the respondent was barred by the statute of limitations cannot be maintained.

Certain rulings of the court upon the evidence are questioned by the appellant, but no material error was committed in any of these rulings.

Judgment and order affirmed.

McFARLAND, J., SHARPSTEIN, J., THORNTON, J., PATERSON, J., and BEATTY, C. J., concurred.