[L. A. No. 858.   Department Two.—September 13, 1900.]

# SAN JOSE LAND AND WATER COMPANY, Appellant, v. SAN JOSE RANCH COMPANY, Respondent.

PUBLIC LANDS—RAILROAD GRANTS—VOID PURCHASE.—The grant of lands to the Atlantic and Pacific Railroad Company had the effect to withdraw the land granted from other disposition, while that grant remained operative, both within the primary and indemnity limits, and the Southern Pacific Railroad Company acquired no right to any of said lands under its grant, and any purchase therefrom is void.

ID.—RESTORATION OF LANDS TO PUBLIC DOMAIN—CONFIRMATION OF WATER RIGHTS.—The restoration to the public domain by the act of Congress of 1886 of the lands granted to the Atlantic and Pacific Railroad Company by the act of Congress of 1866 operated to confirm existing water rights previously acquired by appropriation in 1870, without objection from that railroad company, and it seems that such confirmation made such water rights valid from their inception.

ID.—ACT TO RELIEVE PURCHASERS OF FORFEITED LANDS—PRE-EMPTION RIGHT — SUBORDINATION TO PREVIOUS WATER RIGHTS.—The preemption right conferred by section 5 of the act of Congress of March 3, 1887, to relieve *bona fide* purchasers of forfeited lands, upon purchasers to whom they have been improperly sold by any company as part of its grant, when not included therein, is subordinated to rights of way and ditch and water rights appearing to have been acquired in good faith under the laws of the United States prior to that act, and even prior to the inception of the grant under claim of which the improper sale was made.

ID.—ACTION TO QUIET TITLE—FINDINGS AGAINST PLAINTIFF'S TITLE—UNEXERCISED RIGHT OF PRE-EMPTION — OMISSIONS TO FIND AS TO DEFENDANT'S WATER RIGHT.—In an action to quiet title to land against an adverse claimant of a water right, where it appears that plaintiff had no other title or right than the pre-emption right conferred by the act of 1887, and that such right had not been exercised, and there had been no expression of an intent to exercise it, and that the plaintiff was not in possession of the land, and had never had more than a temporary possession of part thereof, the place and extent of which was not shown, a finding that plaintiff is not the owner of the land is sustained, and a judgment for the defendant for costs is supported, and it is immaterial that there is no finding or judgment as to the defendant's title to the water right where defendant does not appeal or complain of the judgment.

CXXIX. CAL.—43

APPEAL from a judgment of the Superior Court of Los Angeles County and from an order denying a new trial.    W. H. Clark, Judge.

The facts are stated in the opinion.

Dunnigan & Dunnigan, and Anderson & Anderson, for Appellant.

J. S. Chapman, for Respondent.

CHIPMAN, C.—Action to quiet title to the east half of the northwest quarter of section 25, township 1 north, range 9 west, situated in Los Angeles county, and of which plaintiff claims to be the owner.    Defendant denied plaintiff's ownership and denied that defendant claims any interest in the land except "the right to maintain in San Dimas creek (which flows over said land) a dam at a point about one hundred yards northerly from the center of said section 25, and to maintain pipes connecting with the said creek at the said dam for the purpose of conducting the waters of said creek to lands below the said section 25, for the purposes of irrigation and for domestic use," and denies that its said claim is without right. Defendant also pleaded section 318 of the Code of Civil Procedure, as a bar to the action.    For a third defense defendant alleges that in 1868 one J. W. Hanes settled upon a tract of land at the mouth of San Dimas canyon, and near the center of said section 25, claiming the same for cultivation and grazing, and on September 23, 1870, he caused to be recorded in county recorder's office in said county a possessory claim under the act approved April 20, 1852, and acts amendatory thereof, setting forth in his affidavit claiming the land the requisite facts; that he at the same time claimed the waters of said creek for the purposes aforesaid, and had prior to said time entered upon said creek at a point about one hundred yards north of the north boundary line of the southeast quarter of said section, and about twenty feet west of the north and south line through the center of said section, and constructed a dam, and a ditch connected with said creek at a point immediately above said dam and extending down to and upon the land so claimed by him for the purpose of diverting the waters of said

stream, and by means thereof did divert the waters of said stream to and upon the land occupied by him and used the same for irrigation and domestic purposes; that the said ditch and the pipes subsequently laid along the course thereof have been continuously used by defendant and its grantors and predecessors from said time in 1870 to the commencement of this action for said purposes on said lands, and for like purposes on other lands in the vicinity of said southeast quarter of said section 25; that at the time of said appropriation and the location of said land said section 25 was unsurveyed public land, and defendant has succeeded by mesne conveyances to all the right and interest of said Hanes in said dam and ditches, pipes, rights of way, and easements upon said section 25, and it and its grantors and predecessors have, ever since 1870, been in the open, uninterrupted, and notorious and adverse use of said dam, ditches, and pipes, under a claim of right adversely to plaintiff and all the world, and defendant disclaims any other right to said east half of the northwest quarter of said section. The cause was tried by the court and defendant had judgment that plaintiff is not the owner of the land claimed by it, and that defendant recover its costs. There was evidence tending to establish the first and third defenses set up.

It appears from the findings and evidence that the land was within the indemnity limits of the grant to the Atlantic and Pacific Railroad Company under the act of July 26, 1866 (14 U. S. Stats., p. 292); that company failed to build its road and its grant was forfeited by act of Congress of July 6, 1886 (24 U. S. Stats., p. 123), and the land was restored to the public domain. The land in question was also within the ten mile limits of the grant of land to the Texas and Pacific Railroad Company by act of March 3, 1871 (16 U. S. Stats., p. 573); by the terms of that act the Southern Pacific Railroad Company was authorized to construct a line from Tehachapi Pass, by the way of Los Angeles, to the Texas and Pacific Railroad at or near the Colorado river, with the same rights as had been granted to the latter company; the Southern Pacific Railroad Company constructed its line to Yuma between 1874 and 1879, and pursuant to the act of 1871 selected the land in controversy; the land was unpatented and nonmineral; on February 28, 1887,

the latter company entered into a contract of sale and purchase of the northwest quarter of said section with W. D. Noland and Jacob Heckenlively for one hundred and sixty dollars; they paid thirty-two dollars as first payment of the principal and one year's interest in advance, and agreed to pay one hundred and twenty-eight dollars within five years and interest annually, which latter was paid to February, 1892, and no further payments of principal or interest were made; Noland and Heckenlively were citizens of the United States and purchased the land from the company in good faith; it was not then occupied by any *bona fide* claimant under the pre-emption or homestead laws, and had not been settled upon at the date of the purchase, or on March 3, 1887, or subsequent to December 1, 1882, under the settlement laws of the United States; neither Noland nor Heckenlively nor any of their assigns ever settled on the lands, cultivated or fenced any part thereof, but Heckenlively "did under said agreement of purchase, shortly after it was executed (which was February 28, 1887), enter upon said land and commence the construction of a ditch and tunnel thereon." There is no evidence in the record as to where Heckenlively entered upon the land for the purpose stated, how long he remained, or the extent of any work done by him in the construction of a ditch or tunnel, or the extent of his possession of the land. Noland on December 6, 1887, assigned his interest in the contract to Heckenlively; December 14, 1887, Heckenlively conveyed by grant deed to one Cushman the land in controversy, and on August 29, 1888, Cushman conveyed by grant deed to plaintiff the same land. The court finds that in and prior to the months of November and December, 1883, one N. W. Stowell owned, or claimed to own, a certain water right in the waters of said creek, "the character and extent of which water right the court does not now find or adjudicate," and that in said months Stowell laid and constructed across a portion of said land a twelve-inch pipe line to conduct water across said land to the southeast quarter of said section and to other lands; that prior to July, 1887, the defendant had by mesne conveyances "succeeded to and now owns the said water right owned or claimed by the said Stowell, and all the right and interest of the said Stowell in and to said

twelve-inch pipe line"; that defendant in July and August, 1887, did enter upon the land in controversy and "did build and construct thereon, at a point where the waters of said San Dimas creek flow thereon a stone, brick and cement forebay, sand-box or dam, and did lay and construct from said forebay or dam across a portion of said land a fourteen-inch pipe line"; the court finds that defendant claims right to maintain said forebay or dam and the said fourteen-inch pipe line, and also the twelve-inch pipe line laid by Stowell, but makes no other claim of right or title. The court does not find, nor does it decree, that defendant has such right; its conclusion of law is that plaintiff should take nothing by its action, and the decree was that plaintiff is not the owner of the land, and that defendant had judgment for its costs.

As the court has not found upon the issues presented by the affirmative allegations of the answer, but has disposed of the case entirely on the finding that plaintiff has no title to be quieted, we shall direct our attention to that issue.

Appellant contends that if any interest in this land passed to the purchasers under the contract of Noland and Heckenlively with the railroad company, then they or their vendees may protect that right by this action. The provisions of section 738 of the Code of Civil Procedure have been held to be broad enough to include an equitable title to real property (*Tuffree v. Polhemus*, 108 Cal. 670); and it may be that the right to purchase land under the act of 1887, presently to be noticed, may, under some circumstances, be quieted as against an unlawful trespass. The question is, Has plaintiff established a right under the allegation of ownership such as will entitle it to the relief asked? Plaintiff makes no claim under the Atlantic and Pacific Railroad Company's grant. Nor is the claim directly from the Texas and Pacific grant of March 3, 1871, of which the Southern Pacific Railroad Company availed itself by constructing its road. The court finds that this latter company made selection of this land under the act of 1871, but the court also found that the land is within the ten mile limits, which latter fact made the selection an unnecessary proceeding if the grant had otherwise been effective. The selection gave no additional right.

When the grant was made to the Atlantic and Pacific Railroad Company the effect was to withdraw the land granted from other disposition while that grant remained operative both within the primary and indemnity limits, and the Southern Pacific Railroad Company took nothing by its grant and could convey nothing to Noland and Heckenlively. (*United States v. Southern Pac. R. R. Co.*, 146 U. S. 570; *United States v. Colton etc. Co.*, 146 U. S. 615; *Southern Pac. R. R. Co. v. United States*, 168 U. S. 1; *Southern Pac. R. R. Co. v. Painter*, 113 Cal. 247.) Whether defendant's predecessors could acquire any rights of way or other easements, or appropriate the waters of San Dimas creek, after the grant to the Atlantic and Pacific Company, if that company had finally perfected its right to a title and had objected to such appropriation, need not be decided. While the land was withdrawn from entry under its grant it did not object to defendant's appropriation, and before any rights were acquired by plaintiff's predecessors the land was restored to the public domain, and whatever rights defendant's predecessors had acquired by appropriation of water or rights to make ditches and lay pipe lines attached at once upon the forfeiture of the grant of the Atlantic and Pacific Company by the act of 1886 and the restoration of the land to the public domain. If the land had not been granted to the Atlantic and Pacific Company the rights of the appropriators would have attached to the land under the act of July 26, 1866, and amendatory acts, granting the right to construct ditches, etc., and we see no reason why, upon the failure of the grant and the resumption of full title by the government, that defendant's rights did not become valid from their inception. It results that whatever rights defendant acquired were undisturbed by the grant to any of these roads, and but for the act of Congress, next to be noticed, these rights of defendant are indisputable. On March 3, 1887, Congress passed an act entitled "An act to provide for the readjustment of land grants made by Congress to aid in the construction of railroads and for the forfeiture of unearned lands, and for other purposes." (24 U. S. Stats., p. 556.) The main purpose of this act was to relieve purchasers of forfeited lands. Section 2 provided for canceling patents erroneously issued to any company. Section 3 related to *bona fide* settlers under the pre-emption or homestead laws and re-

instated them in their rights if their application was renewed within a reasonable time. Section 4 gave the right to a purchaser in good faith from the railroad company to a patent from the government, upon making proof of such purchase within such time as might be prescribed by the secretary of the interior. The case before us does not come within the provisions of any of these sections.

Appellant claims under section 5, which reads as follows: "That where any company shall have sold to citizens of the United States . . . . as parts of its grant, lands not conveyed to or for the use of such company, . . . . and where the lands so sold are for any reason excepted from the operation of the grant to said company, it shall be lawful for the *bona fide* purchaser thereof from said company to make payment to the United States for said lands at the ordinary price for like lands, and thereupon patents shall issue therefor to the said *bona fide* purchaser, his heirs or assigns." Provisos in the section except therefrom lands "in the *bona fide* occupation of adverse claimants under the pre-emption or homestead laws," etc., and also "lands settled upon subsequent to the first day of December, 1882, by persons claiming to enter the same under the settlement laws of the United States," etc. (24 U. S. Stats., p. 556.)

It will be observed that this right to purchase was subordinated to the rights of claimants under the pre-emption and homestead laws and the settlement laws of the United States, from which it would seem evident that the lands were previously treated as public lands open to settlement. A purchaser from a railroad company prior to the act would gain no advantage by his purchase as against the excepted classes. And we think the right of any such purchaser, who based his right solely on his contract of purchase, would be subordinate to rights of way, ditch and water rights previously acquired in good faith under the laws of the United States. It may be that if the purchaser from the railroad company was in actual possession of the land when the relief act of 1887 was passed, and had made or was making valuable improvements thereon in good faith, believing that he had title from the company, and he showed that he had applied to purchase or that he intended

within a reasonable time to make application to purchase under said act, the courts would protect his right as against a right acquired by another person subsequent to such possession and declared intention. But as between a right, such as is claimed by defendant, acquired prior to the act of 1887 and prior indeed to the act of 1871, and as early as in 1870, and the right by which plaintiff claims, the former must prevail.

In the case before us there is no evidence that plaintiff or its predecessors are now or ever were in possession of the land; there is a finding that Heckenlively, shortly after he entered into the contract with the Southern Pacific Railroad Company, "did enter upon said land and commence the construction of a ditch and tunnel thereon," but there is no evidence as to what part of the land this was or as to the extent of this temporary possession, or how long he remained or what work he did; there is no evidence that plaintiff or any of its predecessors ever applied to purchase the land, or expressed an intention to do so, or that plaintiff now desires to purchase or intends to purchase the land. Its right to purchase accrued, if at all, in 1887. It seems to me, conceding that it has not lost this right by its delay to make application to purchase, that a court of equity ought not to grant the relief asked upon a mere right to purchase, such as is shown in this case, where it appears that plaintiff and no person under whom it claims was ever in possession of the land; is not now in possession; has never applied to purchase the land, and does not show any intention to purchase it. We think there should be some more tangible right shown than appears here before a court of equity will lend its aid to quiet plaintiff's right, which appears to be nothing more than an option to purchase unaccompanied by any equitable circumstances.

Respondent complains that the court made no findings on the facts alleged in defense—in other words, that it did not find as to defendant's title. The complaint alleged ownership in plaintiff; the evidence was clearly insufficient to establish ownership; the findings of fact give all the evidence upon which the claim of plaintiff rests, and the court, as a conclusion of law, found "that the defendant is entitled to judgment that plaintiff take nothing by its suit," and the decree adjudged "that plain-

tiff is not the owner" of the land in controversy. Defendant does not appeal nor complain that its title was not adjudicated. We think the findings cover all the facts on which plaintiff relied to show that it is the owner of the land; and as the facts do not support any claim of ownership, legal or equitable, but do support the conclusion reached by the court, we see no error in omitting to find as to defendant's title or defenses.

The complaint was filed in 1889 and came on for trial in 1890. The findings were lost and the judgment was not filed and entered until March 12, 1897. Findings were substituted by stipulation June 29, 1899, and the appeal perfected thereafter in due time. No explanation is given for the delay in having judgment entered and the findings supplied at an earlier date, but no point is made by either party by reason of these facts.

There are numerous other interesting questions discussed in the briefs, but we think the foregoing disposes of all that are necessary to the decision.

It is advised that the judgment and order be affirmed.

Haynes, C., and Gray, C., concurred.

For the reasons given in the foregoing opinion the judgment and order are affirmed.

McFarland, J., Temple, J., Henshaw, J.

Hearing in Bank denied.