[Sac. No. 1421.   Department Two.—May 2, 1907.]

THE WUTCHUMNA WATER COMPANY, Appellant, v. J. W. C. POGUE, Respondent.

WATER-RIGHTS—APPROPRIATION—PLEADING—DERAIGNMENT OF TITLE.— In an action by an appropriator of the waters of a natural stream to determine the respective rights of himself and the other parties to the action to the use of such waters, it is not necessary for the complaint to allege the historical deraignment of the plaintiff's title and the various methods of its use of the waters. Only the ultimate facts as they existed at the time of the commencement of the action need be alleged.

ID.—DITCH ON GOVERNMENT LANDS.—The rights of a prior appropriator of water by means of a ditch constructed over vacant government lands are superior to the rights of one who subsequently appropriates such water, or to the riparian rights of one who subsequently becomes the owner of the land.

ID.—DIVERSION THROUGH NATURAL CHANNEL.—An appropriator of the waters of a natural main stream has the right to conduct such waters to a point on a lower branch of the stream, and there permit it to flow down the natural channel of the branch to its point of diversion on such branch. And where it appears from the evidence that more water was so turned into the branch than was taken out at such point of diversion, and that this was done in order to preserve the water for use at that point, as against other lower owners and appropriators, it cannot be said that the diversion was a mere appropriation of the natural waters flowing down the branch.

ID.—RIPARIAN OWNER — USE ON NON-RIPARIAN LANDS.—A riparian owner, as such, is not entitled to divert the waters of a natural stream from his riparian lands and sell and dispose of it for use on non-riparian lands.

ID.—ALLEGATION OF RIPARIAN RIGHTS.—In an action to determine the
rights to the waters of a natural stream, a party resting his right
to a portion of the waters upon his riparian ownership must
allege the amount of his irrigable riparian lands and the amount
of water reasonably necessary for his use upon such lands.

APPEAL from a judgment of the Superior Court of Tulare
County and from an order refusing a new trial. W. B. Wallace, Judge.

The facts are stated in the opinion of the court.

E. O. Larkins, for Appellant.

Alfred Daggett, for Respondent.

HENSHAW, J.—In 1899 plaintiff and one Hyde filed their
complaint against the defendant, J. W. C. Pogue, and others.
The action was to determine the respective rights of the parties to the use of the waters of the Kaweah River. The differences as to the plaintiff Hyde were adjusted, and he is
not before this court. The differences between the appellant
and certain of the defendants were satisfactorily adjusted, and
these defendants likewise disappear from the case. The conflicting claims of right of the plaintiff and of the defendant Pogue were tried and determined. So far as the parties
here before the court are concerned, it is sufficient to state
that as between them, the court gave the plaintiff the first
four cubic feet of water per second flowing in the river;
to the defendant the next six cubic feet of water per second;
after which plaintiff was allowed the remainder. Plaintiff
appeals, contending that not only under the evidence, but
under the findings as well, it is clearly entitled to more
water than the court allowed, and that the defendant Pogue's
use is, and should be decreed, subordinate in right to the
appellant's prior claim to a vast amount more of water than
the court awarded it.

The geographical situation, an understanding of which is
necessary for a comprehension of the findings, is as follows:
The Kaweah River, having its source in the Sierra Nevada
Mountains, flows down and across the plains as a single stream,
until at a point some miles above the city of Visalia it divides,
the left-hand branch or fork continuing under the name of

the Kaweah River until near the city of Visalia, where it is known as Mill Creek; the right-hand branch being known as the St. Johns River.

For a long time prior to the year 1871, one Dillon had, by ditch constructed over unoccupied government land, appropriated four cubic feet per second of the waters of the Kaweah River, taking it at a point above the forks of the stream. In 1871 Barton and his associates, having acquired the Dillon rights, commenced the construction of a ditch, and afterward of a second ditch, which two ditches the court finds carried the waters of the Dillon appropriation "in addition to other waters" and devoted "the whole thereof to useful and beneficial purposes and for irrigating lands and watering livestock along the lines of said ditches." These Barton ditches, while devoting these waters to these useful purposes, carried other waters (just how much the court does not find) beyond the fork of the Kaweah River and into the St. Johns branch thereof, a short distance below the point of the river's division. These waters, so carried out of the Kaweah River into the St. John's fork thereof, commingled, of course, with such other waters as the stream carried, and flowed down to another ditch which the court finds was constructed in 1873, which ditch is known as the "Barton Cut." Through this Barton cut a large amount of water was taken and used for beneficial purposes near the city of Visalia. Thus, by the evidence, it is indisputably established that in the year 1874, 59.4 cubic feet per second were used for mill purposes, after which the water was still further used for purposes of irrigation, and, in addition to this, some eight cubic feet per second were used for irrigating lands along the course of the Barton cut. All of the water which the St. Johns River carries comes originally from the Kaweah River. The water taken out of the Kaweah River by the Barton ditch and afterward by the Wutchumna ditch, and which was carried below the point of division of the Kaweah and into the St. Johns channel, was so carried to increase the flow of the St. Johns channel, to prevent this water from going down the Mill Creek channel, and thus to feed the Barton cut, the ultimate place of diversion. To whatever may have been the rights of Dillon, Barton, and his associates the plaintiff has succeeded, the plaintiff being a corporation organized for the purpose of supplying water for useful pur-

poses to its stockholders owning lands in the neighborhood of
the city of Visalia. Barton cut was thus supplied with water
as early as 1873, and the water from the upper Barton or
Wutchumna ditch was thus turned into the St. Johns channel
until 1879. In this year, the plaintiff, for the more economical
conservation and distribution of its waters, ceased to allow
them to flow down the channel of the St. Johns River these
twelve or thirteen miles, but impounded them and carried
them in a flume across the St. Johns River, and so to the neigh-
borhood of Visalia, where they were distributed. This being
the condition of the affairs at the time of the commencement
of the action, the complaint alleged "That the Wutchumna
Water Company is now, and ever since its incorporation, has
been, the owner of that certain ditch known as the Wutchumna
Ditch which leads out of the Kaweah River at a point there-
on," etc., "and runs thence westerly and southwesterly to a
point about five miles southwest of the city of Visalia . . .
and that the plaintiff has appropriated and diverted from said
Kaweah River through said ditch at its head on section 34,
about 133 cubic feet per second of the waters thereof," etc.

The significance of this is that it does not declare, nor does
the complaint anywhere declare, any of the facts touching
the Barton cut and the use thereof, which use, at the time
of the commencement of this action, had been abandoned.
Upon this respondent insists, and it would seem that the
trial court must have adopted his view, that because of the
absence of a pleading upon the earlier use made of these
waters through the Barton cut, plaintiff was not entitled to
recover under the allegations of its complaint, even if it es-
tablished this use. Respondent re-enforces its argument upon
this point by an admission contained in the record. A wit-
ness was testifying to the condition of affairs in 1882 and as
to water which was then discharged into the St. Johns River.
This, it appears, was surplus waters which the plaintiff per-
mitted to flow down the channel after its needs were supplied,
and it will be remembered that at this time plaintiff was con-
ducting the water which it used, by flume across the St. Johns
River. The admission to which counsel for respondent refers,
took place when the witness was testifying as to this condi-
tion of affairs existing in 1882, and the record discloses the
following:

"A. About the first of May, I think it was, I turned the water in, and it ran until September, near the first of July, maybe a little before or after.

"*The Court.*—Q. You turned the water in from the St. Johns?

"A. Yes, sir.

"*Mr. Larkins* (counsel for plaintiff).— In this suit we are not claiming any water from the St. Johns.

"*The Court.*—I understand."

This admission is without force. It obviously had to do with the condition of affairs existing at the time of the filing of the complaint and at the trial of the action, at which time plaintiff was not taking any water through the Barton cut, and was using only the water which it took out of the Kaweah River above its point of division. In this sense, and in this sense only, is the statement of plaintiff's counsel to be understood, when he says that plaintiff is not claiming any of the waters of the St. Johns. For it is apparent that it was claiming, strenuously and assiduously claiming, that by reason of its having carried from the upper Kaweah some hundred or more cubic feet per second of water and emptied it in to feed the channel of the St. Johns, and permitted it to flow down the St. Johns to Barton cut, where it again appropriated it and devoted it to useful purposes, it was entitled to claim all such water; that the only change which it had made in its appropriation was a change in the method of lower diversion and use; that touching its upper ditch, from and through which its original appropriation was made, the conditions and plaintiff's rights remained the same. Nor is respondent correct in arguing that evidence concerning the use of the water through the Barton cut was foreign to the pleadings. Plaintiff, in its complaint, pleaded, as it should have pleaded, the ultimate facts as they existed at the time of the commencement of its action. The change in use, the original mode of conveyance, and the story of the abandonment of the Barton cut, were all probative matters in the establishment of the title and method of diversion of the plaintiff as they stood at the time when the litigation was begun. It was not only unnecessary, but it would have been surplusage, for plaintiff to have pleaded the historical deraignment of its title and the varying methods of its use. (*Heeser* v. *Miller*, 77 Cal. 192, [19 Pac. 375];

*McCaughey* v. *Schuette,* 117 Cal. 223, [59 Am. St. Rep. 176, 46 Pac. 666, 48 Pac. 1088].)

It was in the spring of 1875 that respondent Pogue and his associates commenced the construction of their ditch, which also took water from the Kaweah River above the point of its diversion, and of the diversion of plaintiff, and of this water so taken the court finds and decrees, as has been said, that Pogue was entitled to divert six cubic feet per second, which right was superior to the plaintiff's right to divert any more than four cubic feet per second through its ditch. To sum up as to the findings, the court finds that the plaintiff, long prior to defendant's appropriation, was conducting through the Barton ditch four cubic feet of water per second (the Dillon right) in addition to other waters (quantity not mentioned), all of which were devoted to beneficial purposes. The court further finds that the predecessors in interest of the plaintiff connected the Barton ditches with the channel of the St. Johns River, and did in 1873 construct a ditch known as the Barton cut from the St. Johns channel below and on the opposite side of the river, to the city of Visalia. The court does not find how much water the Barton ditches emptied into the St. Johns channel, nor how much of this water was taken out by the Barton cut. But the evidence shows that at least 67.4 inches were beneficially used through the Barton cut before defendant took the first step toward his appropriation, and it likewise shows that water in excess of this amount was carried by the Barton ditches into the St. Johns channel, and that the waters so carried into the St. Johns channel flowed down it until impounded at the intake of the Barton cut. Yet the court does find that the Wutchumna Water Company *"did not divert or appropriate, as required by law,* any further quantity of water from said river in addition to said four cubic feet of water per second, until the year 1879."

The italicized excerpt from the findings just above quoted would seem to indicate that the trial court meant to convey the idea that the plaintiff did divert and appropriate more than four cubic feet of water per second, and this view certainly has the support of the evidence, from which it appears that from the year 1871 on, the Barton or Wutchumna ditch turned into the St. Johns channel more water than was taken out through the Barton cut. The finding, therefore, must

mean that this excess of water over four cubic feet per second
was not appropriated as required by law. Wherein this find-
ing derives support, excepting from the theory above adverted
to, that the waters taken from the Barton cut could not be
considered because of the alleged defect in the pleadings, we
are unable to perceive. Because, as to plaintiff's title to the
water, it is indisputable that the Wutchumna ditch was con-
structed over vacant government land prior to the time that
Pogue acquired any of his rights either as an appropriator or
as an owner of riparian lands, and, consequently, upon well-
settled principles, the plaintiff's earlier rights of appropria-
tion are superior to Pogue's later rights either as an appro-
priator or as riparian land owner. (*Osgood* v. *Eldorado Water
Co.*, 56 Cal. 571; *Senior* v. *Anderson*, 115 Cal. 500, [47 Pac.
454]; *San Jose L. and W. Co.* v. *San Jose Ranch Co.*, 129 Cal.
673, [62 Pac. 269].)

Moreover, plaintiff had the undoubted legal right to adopt
and use its original method of appropriation,—that is to say,
to carry the water out of the Kaweah River and down to the
St. Johns branch thereof, there permitting it to flow down the
natural channel to its point of diversion. Such a right is rec-
ognized in *Hoffman* v. *Stone*, 7 Cal. 47; *Paige* v. *Rocky Ford
Canal Co.*, 83 Cal. 85, [21 Pac. 1102, 23 Pac. 875]; Long on
Irrigation, sec. 43; Black's Pomeroy on Water Rights, sec.
49. Nor can it be said, in view of the evidence, that the di-
version by Barton cut was a mere appropriation of the natural
waters flowing down the St. Johns River. Because it is shown
by the evidence not only that more water was turned into the
St. Johns River from the Kaweah than was taken out by the
Barton cut, but additionally the reason is made plain why
this was done. It was to preserve for use at the Barton cut
this water, which otherwise, by lower owners and appropri-
ators, might and would have been diverted into the other
branch of the Kaweah, or taken out at the fork, and so lost
entirely to the St. Johns channel. Nor do the pleadings and
findings touching Pogue's title in and interest to the water
serve to elucidate the difficulty. Pogue in his answer alleges
both his right as appropriator through the Pogue, Wallace, and
Crocker ditch,—a ditch which defendant and his associates
constructed and first drew water through in 1875,—and also his
ownership of certain lands riparian to the Kaweah River. The

court awards him six cubic feet per second, without limitation upon its use, and it is unquestioned that he is carrying this water away from his riparian lands and there selling and disposing of it—a use which, as a riparian owner, he is, of course, not entitled to make. Moreover, considering Pogue's claim as resting upon his riparian ownership, he nowhere properly pleads his riparian rights, nor the amount of his irrigable riparian lands, nor the amount of water reasonably necessary for his use upon such lands. (*Riverside Water Co.* v. *Gage,* 89 Cal. 420, [26 Pac. 889]; *Wiggins* v. *Muscupiabe L. and W. Co.,* 113 Cal. 194, [54 Am. St. Rep. 337, 45 Pac. 160]; *San Luis Water Co.* v. *Estrada,* 117 Cal. 182, [48 Pac. 1075].) As the pleadings exist, it must be concluded that the court's award is based upon his claim as an appropriator through the Pogue, Wallace, and Crocker ditch. But as an appropriator the evidence leaves no doubt that he is later in time, and therefore subordinate in right to plaintiff, who, as has been said and shown, was certainly putting to beneficial use some sixty-seven cubic feet of water per second in addition to the four cubic feet awarded, long before the defendant ever commenced the construction of his ditch.

It follows herefrom that a new trial must be ordered, to the end that the court shall find upon these omitted matters, and determine the rights of the defendant as appropriator, for it is only as an appropriator that, in the present state of his answer, the defendant Pogue can be heard to assert any rights at all.

The judgment and order are therefore reversed and the cause remanded.

McFarland, J., and Lorigan, J., concurred.