[Civ. No. 4237. Fourth Dist. July 17, 1951.]

ARTHUR TROTTIER et al., Appellants, v. M. H. GOLDEN CONSTRUCTION COMPANY et al., Respondents.

Luce, Forward, Kunzel & Scripps for Appellants.

H. G. Sloane and H. M. Fisher for Respondents.

MUSSELL, J.—On January 9, 1948, defendant Golden Construction Company as builder and general contractor entered into a written contract with El Centro Properties, Inc., for the construction of a minimum of 60 and a maximum of 99 houses on property in El Centro known as ''Western Acres Subdivision.'' The contract provided, among other things, that the construction of these single family houses was to be

financed under the provisions of section 603 of the National Housing Act; that the owners of El Centro Properties, Inc., would make application to the Federal Housing Administration and a bank for 99 construction loans, to be insured by the housing administration; that in the event all of the construction loans were not immediately granted, the owner would immediately commence construction up to a minimum of 60 houses under the loans granted and would thereafter proceed with all possible speed and dispatch to procure additional 603 construction loans up to the maximum number of 99.

On February 16, 1948, plaintiffs entered into a written subcontract with the defendant general contractor for the lathing and plastering. El Centro Properties, Inc., applied for and obtained the necessary commitments and loans for the construction of 62 of these single family residences. No application was thereafter made under section 603 of the National Housing Act for additional commitments to finance the remaining 37 single family residences. The 62 houses were completed under the loans obtained and construction ceased.

When the project came to a halt, plaintiffs had on hand on the job site a large quantity of lathing and plastering material which they were unable to use and which they allege became valueless to them. Plaintiffs commenced the present action for loss of such building materials and supplies and for loss of profits allegedly due to defendants' failure to construct an additional 37 dwellings.

Defendant Golden Construction Company filed a cross-complaint for damages allegedly occasioned by the failure of plaintiffs to perform the lathing and plastering according to the terms of the contract.

The trial court rendered judgment against the plaintiffs on their complaint and judgment against the cross-complainants on the cross-complaint. Plaintiffs appeal from both judgments.

The trial court found that the plaintiffs at the time of executing their subcontract knew or should have known that the construction of any number of houses in excess of 60 was dependent upon procurement by the owner of so-called 603 loans authorized by the Federal Housing Authority on each additional house above 60 and upon assignment of the proceeds of such loan to the general contractor as a condition precedent to construction; that no such loans above 62 were

obtained and no funds were assigned to the general contractor for construction of any such houses beyond the aggregate of 62; that such failure was not due to any fault of the plaintiffs, of the owner, or of the defendant; that the subcontract entered into by plaintiffs, by its terms, incorporated the general contract referred to as the "prime" contract; that the defendant did not fail or refuse to provide any houses for lathing and plastering which it was required to furnish under the subcontract; that all building of "603" houses by the general contractor and all lathing and plastering thereof as required by the terms of such prime contract and such subcontract was completed prior to October 27, 1948, and the fact of such completion was then and prior thereto acknowledged by both the plaintiffs and the defendant; that the plaintiffs had performed their plastering in a good and workmanlike manner and that the defendants, who cross-complained, were not damaged by reason of the work performed by plaintiffs.

 Appellants first contend that the Golden Construction Company's failure to provide more than 62 houses for lathing and plastering constituted a breach of the purchase order and subcontract agreement for the reason that it was bound under the terms and provisions of the subcontract to provide appellants with 99 houses for lathing and plastering.

As heretofore noted, the prime contract provided for the financing of the houses under section 603 of the National Housing Act and that the contractor would immediately commence construction of a minimum of 60 houses. All proceeds of the 603 construction loan were to be assigned to the builder for use by it in paying the costs of construction and its compensation. The contract further provided that the owner would first secure F.H.A. commitments and construction loans in an amount not less than $7,500 for each loan upon which the builder was obligated to construct a house. Since the owner failed to secure commitments and loans except for the 62 houses completed, the general contractor was not required to construct an additional 37 houses and it is evident that the parties to the prime contract intended to be bound absolutely only to the extent of the construction of 60 houses.

The subcontract agreement, by its terms, provided that the plaintiffs were to furnish materials and perform work for Western Acres Subdivision in "accordance with the general

conditions of contract between the owner and the contractor and in accordance with the drawings and specifications prepared by .........., hereinafter called the Architect, all of which General Conditions, Drawings and Specifications signed by the parties thereto or identified by the Architect, form a part of a Contract between the Contractor and owner. . . . and hereby become section 2 of this contract." Section 5 provides, among other things, that the subcontractor agrees "to be bound to the Contractor by the terms of the Agreement, General Conditions, Drawings and Specifications, and to assume toward him all the obligations and responsibilities that he, by those documents, assumes toward the owner." It further provided that the subcontractor should furnish labor, material and supplies and to plaster 99 houses, "more or less," according to plans as revised.

Mr Scull, business manager for the Golden Construction Company, testified that he informed the plaintiffs prior to the execution of the subcontract that the prime contract called for 62 houses; that 62 commitments had been made and that all other jobs were contingent upon additional commitments; that "There was 62 commitments and that if and when more were made, we would build up to the maximum number of lots on that tract;" and that "this whole tract was under section 603 of the F.H.A."

It is apparent that the general terms of the prime contract were incorporated in the subcontract by reference and that the plaintiffs were bound thereby. They had actual notice of the conditions applicable to their contract, as shown by the testimony of the witness Scull. Furthermore, the subcontract provided for the plastering of 99 houses, "more or less," a circumstance indicating to some extent at least that the exact number of houses to be plastered was not definitely known to the parties.

Appellants argue that the "prime contract" was not incorporated into the subcontract because it was not identified therein and because the subcontract only purported to incorporate the "general conditions" of the prime contract. The argument is without merit.

The uncontradicted evidence shows there was only one prime contract; that the prime contract was available to plaintiffs at the offices of the general contractor and since its "general conditions" were made a part of the subcontract, the plaintiffs were bound to investigate its terms and con-

ditions. Furthermore, appellants were informed by Mr. Scull of the commitments made and of the uncertainty as to the construction of houses in excess of the minimum of 60.

■ The trial court found "that all building of '603' houses by the general contractor and all lathing and plastering thereof, as required by the terms of such prime contract and such sub-contract, was completed prior to October 27, 1948, and the fact of such completion was then and prior thereto acknowledged by both the plaintiffs and the defendant herein."

It was shown that from July, when the plastering ceased, until September 27, 1948, the subcontractors attempted no communication with the general contractor. On the latter date they wrote calling attention to "an overdue balance on the 62 houses which were completed" and on October 12, 1948, they informed Golden Construction Company that they could not complete any further houses under their contract. The appellants acquiesced in cessation of work and dissolved their work force.

■ The trial court was entitled to consider the construction placed upon the contract by the parties. (*Herrlein* v. *Tocchini*, 128 Cal.App. 612, 622 [18 P.2d 73].) As was said in *Barham* v. *Barham*, 33 Cal.2d 416, 423 [202 P.2d 289] :

"Where any doubt exists as to the purport of the parties' dealings as expressed in the wording of their contract, the court may look to the circumstances surrounding its execution—including the object, nature and subject matter of the agreement (*Wachs* v. *Wachs*, 11 Cal.2d 322, 326 [79 P.2d 1085])—as well as to the subsequent acts or declarations of the parties 'shedding light upon the question of their mutual intention at the time of contracting' (*Lemm* v. *Stillwater Land & Cattle Co.*, 217 Cal. 474, 481 [19 P.2d 785]). To this latter point, it is said that 'a construction given the contract by the acts and conduct of the parties with knowledge of its terms, before any controversy has arisen as to its meaning, is entitled to great weight and will, when reasonable, be adopted and enforced by the court.' (*Woodbine* v. *Van Horn*, 29 Cal.2d 95, 104 [173 P.2d 17] ; see, also, 20 Am.Jur. § 1144, p. 998.)"

■ We are unable to say that the quoted finding of the trial court was without substantial evidence in the record.

■ Finally, it is contended that the Golden Construction

Company was under a contractual duty to provide appellants with 99 houses for lathing and plastering for the reason that the prime contract contained an unconditional and unqualified covenant upon the part of El Centro Properties, Inc. to provide not less than 99 lots, the necessary architectural and engineering services and the necessary financing for the purposes of constructing not less than 99 single family residences on the Western Acres Subdivision. However, as noted, the prime contract provided for 60 houses with a possibility for 39 more. Since the Golden Construction Company, under the terms and provisions of the prime contract was not in a position to compel the financing of 99 houses, the completion of any number beyond 60 was contingent upon the procurement of construction loans by the owner. It is apparent from the record that the contractor was obliged to build when furnished with funds. It assumed no obligation whatever except upon the happening of a condition precedent, namely, the securing of a 603 loan on each separate house and delivery of the proceeds into the hands of the contractor.

The judgments are affirmed.

Barnard, P. J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied September 13, 1951.