[Civ. No. 8375.   Third Dist.   Mar. 8, 1954.]

STELLA M. TALBOT, Appellant, v. JULIAN GADIA, Respondent.

Irving D. Gibson for Appellant.

White, Harber & Schei for Respondent.

SCHOTTKY, J.—Plaintiff commenced an action against defendant seeking to quiet her title to certain real and personal property in the city of Sacramento and for damages resulting to plaintiff from the possession of said property by defendant. Defendant filed an answer denying the material allegations of the complaint and also setting up the defense that defendant was the owner of the property and that plaintiff held the legal title as security for the payment of the unpaid balance on a promissory note.

The case was tried by the court sitting without a jury, and the court found substantially in accordance with the affirmative allegations of the answer, and judgment was entered

providing that if defendant tendered to plaintiff (a) $3,175 (the unpaid principal balance of the note) with interest from September 15, 1951, (b) $13.50 (fire insurance premium) and other insurance premiums paid by plaintiff since the trial, with interest at 6 per cent from date of payment, and (c) taxes paid on property by plaintiff since date of trial, with interest at 6 per cent from date of payment, then plaintiff would be required forthwith to convey and transfer the real and personal property to respondent by good and sufficient grant deed and bill of sale. The judgment also required that the tender be made within 60 days after entry of judgment or after judgment in favor of defendant becomes final, and it provided that if the tender were not so made then judgment would be entered quieting title in appellant. Plaintiff's motion for a new trial and her motion to vacate judgment and to enter another and different judgment were denied by the trial court, and plaintiff has appealed from the judgment.

Appellant makes numerous contentions, but before discussing any of them we shall give a summary of the evidence as disclosed by the record, bearing in mind the familiar rule that all conflicts in the evidence must be resolved in favor of the prevailing party.

Appellant is the widow of Richard P. Talbot who for many years prior to his death in 1948 was an attorney at law practicing in Sacramento County. Appellant and said Richard P. Talbot had been married for more than 40 years when the latter died. In 1945 respondent learned that the real property known as number 4100 32d Street, in the city of Sacramento, was for sale, together with certain furniture and furnishings therein. The purchase price for the property was $6,450. Respondent made a $50 deposit on the purchase price and then consulted with Attorney Talbot regarding the proposed purchase. Respondent had been a client of Talbot's for many years prior to this transaction and he asked Talbot to find out if everything was all right. Talbot told respondent, apparently after some investigation, that everything was all right and that if respondent wanted the property he could have it. Respondent did not have sufficient funds to pay the full purchase price and Talbot agreed to lend him $3,000 for that purpose. Attorney Talbot handled the details of the purchase, and the deed from the sellers was taken in his name and that of his wife as joint tenants. The deed was dated March 12, 1945, and was recorded on March 15th. A

bill of sale for the furniture and furnishings was also given to Mr. Talbot, but it is not in evidence.

Respondent paid $3,450 of the purchase price, and Mr. Talbot paid the remainder, i.e., $3,000, from funds comprising community property belonging to him and appellant. On the same day that the deed to the Talbots was recorded, respondent went to Mr. Talbot's office where he and Talbot executed the following instrument:

"THIS IS TO CERTIFY that Richard P. Talbot has advanced to Julian Gadia, residing at 4100 - 32nd Street, Sacramento, California, the sum of $3000.00 and that said Gadia paid for said property the sum of $6450.00 and said property is vested in the said Talbot and when said Gadia pays said Talbot the sum of $3000.00 and interest to date according to one promissory note of even date, said Talbot, his heirs or assigns is to deed said property to Julian Gadia or any person or persons he so designates.

"This instrument is binding on the heirs and assigns of the parties hereto."

At the same time, respondent gave Mr. Talbot his promissory note for $3,000, bearing interest at the rate of 6 per cent per annum. Appellant testified at the trial that her husband handled all of their financial transactions, but that she knew he was advancing money to respondent. When asked whether her husband told her that he had taken a deed to the property, she answered, "Well, that was my understanding he had to be secured some way."

Upon completion of the above transaction, respondent went into possession of the property and has been in possession since that time. Respondent made various payments on account of principal and interest on the March 15, 1945, promissory note, and may have received further advancements from Mr. Talbot, for at the time of the next transaction, in mid-September, 1947, the balance owing on the principal was $2,550, and interest had been paid to March 15, 1947. Respondent needed money for his barbershop and he asked Mr. Talbot to increase the principal amount of the loan to $3,500. The latter agreed to do so, and respondent signed a new promissory note for that amount, and he and Mr. Talbot executed a new instrument regarding the property. The note was dated September 15, 1947, and is as follows:

"No. _____

"$3500.00    Sacramento, California    September 15 - 1947.
"One (1) day after date, for value received, I promise to

pay to Richard P. Talbot or order, at Sacramento, California, the sum of Thirty Five Hundred and 00/100 ($3500.00) Dollars, in lawful money of the United States with interest thereon from date until paid, at the rate of six (6%) per cent per annum, said interest payable in advance in like lawful money. And in case said interest, or any part thereof, is not paid within 30 days after the same becomes due, then the whole of said principal sum shall forthwith become due and payable at the election of the holder of this note, without notice.

"This note is secured by D E E D bearing even date herewith.

Julian Gadia"

The instrument was dated the same day and is identical to the one which it superseded (quoted above), except for dates and amounts. It is as follows:

"THIS IS TO CERTIFY and RICHARD P. TALBOT has advanced to JULIAN GADIA, residing at 4100 - 32nd Street, Sacramento, California, the sum of $3500.00, and that said GADIA paid for said property the sum of $6450.00, and said property is vested in the said TALBOT, and when said GADIA pays said TALBOT the sum of $3500.00 and interest to date according to one promissory note of even date, said TALBOT, his heirs or assigns are to deed said property to JULIAN GADIA or to any person or persons he so designates.

"This instrument is binding on the heirs and assigns of the parties hereto."

On September 17th Mr. Talbot gave respondent a check for $837.50, so the new principal amount of the loan ($3,500) apparently covered the following: (a) Payment of the $2,550 unpaid principal balance of the old note; (b) payment of interest from March 15, 1947, to September 15, 1947 (½ of 6 per cent of $2,550); and (c) an additional advance of $837.50.

Mr. Talbot died on January 12, 1948. His estate was probated in Sacramento County and his daughter, Dorothy Talbot Erich, was appointed executrix of his estate. The promissory note for $3,500 was listed as an asset of the estate and in due course of administration was distributed to appellant, together with all of the other assets of the estate. The real and personal property involved here was not included among the assets of the estate.

By payments made at various times by respondent and accepted by appellant or her predecessors in interest, the principal balance of the $3,500 promissory note was reduced to $3,175. Interest due on the note was paid to September 15, 1951. · In addition, respondent paid all taxes and insurance on the property, except county taxes for the fiscal year 1951-1952, which were due but not paid by either respondent or appellant, and a fire insurance premium in the amount of $13.50 paid by appellant on April 11, 1951. It appears that most of these payments were made by way of reimbursement to the estate which made the payments initially. Appellant testified that she knew respondent was making payments after her husband died.

On about February 13, 1951, appellant deposited in escrow a quitclaim deed to the property, with instructions that it be delivered to respondent if the latter would pay to appellant the sum of $4,552.52 on or before February 28, 1951. The $4,552.52 claimed by appellant included not only the unpaid principal balance of $3,175, but also property taxes (for which the estate had been reimbursed) with 7 per cent interest thereon, the additional advancement of $873.50 (which had been included in the principal amount of the new note) with like interest, and attorney's and notary's fees. The parties being in disagreement as to the amount owing by respondent, and the latter having made no further payments, appellant commenced the instant action against respondent.

Appellant's many contentions may be summarized as follows: (1) That she, as surviving joint tenant, took title free from any claims of respondent to the property, (2) that respondent was in default when the action was commenced and therefore has no right to pay the note at this late date, and (3) that respondent did not properly plead his case, so that some findings (necessary for the judgment) are outside the issues.

In support of her first contention appellant argues that since all of respondent's dealings were with Mr. Talbot, and she was not a party to the agreement that the property was to be deeded to respondent when the note was paid, and since she took title as surviving joint tenant and not by direct transfer from her husband or his estate, she is not bound by the obligations assumed by her husband in the transaction. However, as pointed out by respondent, and

as found by the court upon uncontradicted evidence, the $3,000 which the husband, Mr. Talbot, advanced for the purchase of the property was community property of Talbot and appellant; title to the property was taken in the names of Talbot and appellant as joint tenants as security for the loan; and appellant was aware of the transaction, and accepted payments on account of said loan. It is clear, therefore, that whatever interest appellant has in the property arose out of the transaction which she now seeks to avoid, and that she is in no sense a bona fide purchaser, as she was fully aware of the transaction and fully acquiesced in it up to the time that she made her excessive demand for the balance due and brought the instant action to quiet title. ■ When a conveyance is executed from the vendor direct to the lender, to secure a loan of the purchase money made by him to the purchaser, the legal title is held not only for the lender as security, but also in trust for the borrower for the purpose of finally having title go to him. (*Conway* v. *Moore,* 70 Cal. App.2d 166, 172 [160 P.2d 865].) The grantee thus holds a double relationship to the purchaser, being trustee of the legal title and mortgagee for the money advanced for its purchase. ■ Parol evidence is admissible to show that a conveyance of real property, although absolute in form, is in fact a mortgage. (*Jensen* v. *Friedman,* 79 Cal.App.2d 494, 498 [179 P.2d 855].) ■ There is no merit in appellant's argument that the transaction was not a mortgage because respondent never held legal title to the property and therefore had nothing to mortgage. Appellant who had knowledge of the transaction and accepted its benefits is not entitled to renounce it.

Appellant next contends that respondent was in default when the action was commenced and that he had no right to be relieved from such default by paying the balance due on the note. Appellant argues that the $3,500 note was payable one day after date of making, and that there was no allegation, proof or finding of waiver of time of payment. Appellant argues further that, payment not having been made in full, respondent was and is in default.

There is no direct finding with respect to default by respondent, although there is a conclusion that any failure or delay on the part of respondent to make payment was excused or waived by acceptance of payments made. The promissory note, itself, is ambiguous as to time of payment. It provides for payment one day after date, but also provides for annual

interest of 6 per cent payable in advance, and that upon default in interest payments for 30 days the whole of the principal shall become due and payable at the option of the holder. This acceleration clause is meaningless if the whole of the principal sum is already due and payable, which would be the case if the note were a one day note. ■ Extrinsic evidence is admissible to explain an ambiguity in a negotiable instrument the same as in any other contract. (*Steffen* v. *Refrigeration Discount Corp.*, 91 Cal.App.2d 494, 499 [205 P.2d 727]; *Trigg* v. *Arnott*, 22 Cal.App.2d 455, 457 [71 P.2d 330].) ■ The practical construction which the parties themselves placed upon the language of the note is persuasive evidence of their intent. (*Vogel* v. *Bankers Bldg. Corp.*, 112 Cal.App.2d 160, 166 [245 P.2d 1069]; *Trottier* v. *M. H. Golden Construction Co.*, 105 Cal.App.2d 511, 516 [233 P.2d 675].) In the instant case, the parties apparently treated the note as a demand note, for payments (both principal and interest) were made and accepted in varying amounts at irregular intervals during Talbot's lifetime and after his death. The record does not show that Talbot or appellant, as holders of the note, ever demanded payment in full, at least prior to appellant's escrow letter of February 13, 1951, and that letter required a payment in excess of the amount actually owing.

Even assuming that it must be held that the note was payable one day after date, and that respondent was in default, it does not necessarily follow that appellant is entitled to a forfeiture. The record shows a course of conduct, both by Talbot and later by his administratrix, which may properly be deemed a waiver, in that they accepted payments of principal and interest without regard to the time factor. (See *Stevinson* v. *Joy*, 164 Cal. 279, 285 [128 P. 751], and *Boone* v. *Templeman*, 158 Cal. 290, 295-297 [110 P. 947], both involving installment contracts for the purchase of land.) ■ The law looks with disfavor upon forfeitures, and evidence tending to show the waiver of a forfeiture will be favorably regarded, and the forfeiture will be avoided upon any reasonable showing. ■ The amount of evidence required to establish a forfeiture is much greater than that required to establish a waiver, and the waiver may be implied from the acts and conduct of the parties. (*Knarston* v. *Manhattan L. Ins. Co.*, 124 Cal. 74, 77 [56 P. 773], involving life insurance contract.) ■ The test which determines

whether equity will or will not interfere in such cases is the fact whether compensation can or cannot be adequately made for a breach of the obligation which is thus secured. (*Gonzalez* v. *Hirose*, 33 Cal.2d 213, 216 [200 P.2d 793], quoting from Pomeroy, Equity Jurisprudence.) ■ Equitable principles apply in a quiet title action. (*Gonzalez* v. *Hirose, supra*, p. 217.) In the instant case the obligation was to pay money, so that full restitution can be made by payment. ■ In this case, as in *Gonzalez* v. *Hirose, supra*, the result would be unconscionable if respondent be denied the relief granted by the trial court. The court's judgment also is in accord with the provisions of section 3275 of the Civil Code. (See *Barkis* v. *Scott*, 34 Cal.2d 116 [208 P.2d 367], for a discussion of this code section.)

The third contention of appellant which we shall discuss is that respondent (1) does not deny that legal title to the property is in appellant by reason of the joint tenancy deed, (2) shows by the defeasance agreement (annexed to the answer) that appellant is not a party thereto, and (3) pleads the note which is payable one day after date, admits that there is an unpaid balance owing on the note, and does not affirmatively plead a waiver of payment or extension of time by appellant. Appellant also suggests that the matter of the note and the defeasance agreement should have been presented by way of cross-complaint, rather than as a separate defense, although when the question was raised at the trial her counsel stated that he was not objecting to the form of the pleading. Appellant complains that certain findings are not supported by the evidence or are on issues not raised by the pleadings, and that certain conclusions are not based on findings. Appellant's contentions in this regard are a repetition of her arguments that the transaction was neither a trust nor a mortgage, that she was not a party to it, and that respondent is in default and no waiver by her was pleaded or shown.

Respondent, in reply, contends that the pleadings are sufficient to put the case at issue and permit the introduction by him of any evidence which would show his rights in the property. He points out that the allegations of appellant's three causes of action are denied in the answer, except for the admission that respondent does claim an interest in the property, and that respondent's second defense sets up in detail the basis of his claim to the property. He contends that it was not necessary to file a formal cross-complaint

and that the pleadings were sufficient to support the judgment rendered.

We are satisfied that the pleadings were sufficient to raise all of the issues determined in the action. (See *Jensen* v. *Friedman*, 79 Cal.App.2d 494, 505 [179 P.2d 855].) It was not necessary that respondent file a cross-complaint, he having denied the claims of appellant and having declared affirmatively the basis of his claim to the property. (*Milton E. Giles & Co.* v. *Bank of America*, 47 Cal.App.2d 315, 323 [117 P.2d 943]; *Rinker* v. *McKinley*, 65 Cal.App.2d 109, 111 [149 P.2d 859].) Furthermore, appellant did not demur to respondent's answer, and at the trial appellant's counsel stated: "There seems to be no cross complaint here. There is merely the answer. And I suppose that under the answer, that these defenses can be set up, but it doesn't ask for any affirmative relief, except as it is stated in the allegations of the answer. Not that I am objecting to the form of the pleading particularly, because this is a suit in equity, but there is no cross complaint, and necessarily the Plaintiff has filed no answer. But I assume all of these allegations are deemed to be denied."

No other points urged require discussion.

The judgment is affirmed.

Peek, J., and Paulsen, J. pro tem.,* concurred.

---

*Assigned by Chairman of Judicial Council.