## NICHOLA FERREA *v.* MARK KNIPE.

RIGHTS OF RIPARIAN PROPRIETORS.—The riparian proprietor to whom water first comes has not the right to erect dams across the stream and spread out the water, so that it is lost by absorbtion and evaporation to an extent that prevents it from flowing to another riparian proprietor as it would have done but for the dams.

REASONABLE USE OF WATER.—It is not a reasonable use of water for a riparian proprietor, who desires to use the same for watering cattle and for domestic purposes, to erect dams across the stream, by which the water is spread out and lost by evaporation and absorption so as to injure another riparian proprietor below.

APPEAL from the District Court, Seventh Judicial District, Solano County.

The plaintiff commenced his action on the 18th day of June, 1864, alleging that for eight years then immediately preceding he had been in the possession of a parcel of land consisting of twenty-five acres, through which runs the Sulphur Spring Creek in Solano County, which he had used during that time as a garden for raising vegetables for market. That in May, 1856, he constructed a dam upon his land across the creek, and since then had appropriated without hindrance to his own exclusive use for irrigating his garden, all the waters of the stream; and he claimed that by reason of his long continued exclusive use of the water he had acquired a right by prescription to the use thereof to the extent and for the purpose of its original appropriation, and then had the right to the flow of the entire water of the creek without obstruction, into the reservoir created by his dam, for the benefit of his land, as a right and privilege appurtenant thereto. He then claims that in 1863 the defendant erected a dam across the stream above the plaintiff's dam by which a part of the water was prevented from running down the course of the creek to the plaintiff's land. That in April, 1864, the defendant constructed other dams across the same stream, and that, by reason of the obstruction and diversion of the water by these dams the plaintiff was deprived of his accustomed use of it, to the great injury of his business and to his great damage, and he then alleges the insolvency of the defendant, and also that if the wrongs of which he complains are continued his business and trade will be wholly ruined.

The object of the action was, first, to recover damages for the injury already sustained; second, to abate the defendant's dams; and third, to obtain an injunction restraining the defendant from obstructing, diminishing, or diverting the waters of the creek from flowing to the plaintiff's dam.

The defendant answered the complaint. The issue joined was referred to a Court Commissioner, with directions " to report the facts and law." Testimony was taken in the case, and the referee found and reported the facts and his conclusions of law in favor of the defendant. This report, as to the facts,

was set aside by the Court on the plaintiff's motion, and a finding of facts, prepared in part by the plaintiff's counsel, and in part by the defendant's counsel, was substituted, which, with the conclusions of law drawn by the referee, was adopted by the Court, and judgment was thereupon entered in the defendant's favor.   The plaintiff moved for a new trial.   The motion was denied.   From this decision and the judgment the plaintiff appealed.

*Wm. S. Wells,* for Appellant.

The cases in this State have fully settled and affirmed the doctrine of appropriation of water by the erection of a dam and its subsequent use, as establishing a prior right.   (*Hill* v. *Smith,* 27 Cal. 476 ; *Yankee Jim Water Company* v. *Crary,* 25 Cal. 504.)

It is certainly immaterial what was the purpose or object with which defendant invaded our right.   It is no answer to say, as he does really say, that though he injured us in May, yet when the suit was tried no water was running.   It must be obvious from the facts in the complaint the injury for an entire year might be done within the term of a few weeks. Our right was to have the water flow, if flow it would, unobstructed at any and all times.   Diversion or obstruction, if wilful, imports damage, and against actual, threatened, or possible injury this action lies.   (Angel on Watercourses, Section 135, and cases cited ; same, Sections 449, 450.)

*M. A. Wheaton,* for Respondent.

Merely using the water of a stream for irrigation by a riparian proprietor is but the exercise of a *natural right,* and the plaintiff in so doing *could not affect the natural rights of other riparian proprietors* either above or below him. (*Sampson* v. *Hoddinott,* 1 C. B. N. S. 590.)

Washburn on Easements and Servitudes, 235 ; *ibid,* 271, 216, 217, 250, 251, 252, and 253, the last referring to the case of *Thurber* v. *Martin,* 2 Gray, 394, where it was held

that *sixty years* use of a stream for mill purposes did not affect the natural right of an upper riparian proprietor to erect another mill. In this case Ferrea did not use the water *adversely to any one*, because he did not infringe upon the rights of any one. His right to so use the water came, not by prior occupancy, but as an incident to his land through which the stream run. The defendant, as an upper riparian proprietor, had a right to stop and use the whole of the stream, if necessary, for watering his stock. (Washburn on Easements, 223, 224.)

By the Court, CURREY, J.

In 1863, as appears by the finding, the defendant erected a dam across the creek above the plaintiff's dam, by which the natural flow of the stream was obstructed. In April, 1864, he erected two other dams across the same creek above the plaintiff's dam, by means of which several dams the water of the stream was entirely obstructed and prevented from flowing to the dam of the plaintiff, whereby the plaintiff was wholly deprived of the waters of the stream, and his vegetables and fruit growing at the time of the erection and continuance of these dams were injured to his damage in the sum of two hundred dollars. It further appears by the finding that the object of the defendant in erecting his dams was only to detain sufficient water for his stock, and that he used the same for no other purpose, and that when the action was brought there was not water enough in the creek to flow to the plaintiff's reservoir if no dams had been erected above it.

The evidence in the case shows that the last named year was one of extreme drought, and that at the time this action was commenced the water of the creek was so reduced in quantity at the place where the defendant had erected his dams (which were more than a mile from the plaintiff's land) as to be insufficient to flow over such dams. Every proprietor of lands through or adjoining which a watercourse passes has a right to a reasonable use of the water; but he has no

right to so appropriate it as to unnecessarily diminish the quantity in its natural flow. The use of the water of a stream for domestic purposes and for watering cattle necessarily diminishes the volume of the stream. This is unavoidable, and though by reason of such diminution a proprietor on the stream below fails to receive a supply commensurate with his wants, he is without remedy, because his right subsists subject to the rightful use of the water by his neighbor on the stream above him. But while admitting that a riparian owner to whom the water first comes in its flow, has the right to use it for domestic purposes, and for watering his cattle, it is proper to observe that he has not the right to so obstruct the stream as to prevent the running of water substantially as in a state of nature it was accustomed to run. The maxim of the law which he is bound to respect while availing himself of his right is, *sic utere tuo ut alienum non lædas.* (3 Kent, 440; Angel on Watercourses, Section 195; *Tyler* v. *Wilkinson,* 4 Mason, 440.)

The Court found that by reason of the dams erected by the defendant "the flow of the stream was wholly obstructed, and the waters detained were prevented from flowing to the dam of the plaintiff, and that he was thereby deprived of the use of the same, prior to the commencement of this suit," and "that the plaintiff has sustained damages, by reason of said acts of defendant, in the sum of two hundred dollars." The Court also found that the defendant was insolvent and unable to respond to any judgment that might be recovered against him. The Court further found that the defendant erected the dams "only to gather sufficient water for watering his stock, and used it for no other purpose," and "that at the time this suit was commenced there was not water enough to flow to the plaintiff's pond, had no dams been built."

The fact that the water was so reduced in quantity at the time the action was commenced as to be insufficient to flow to the plaintiff's premises, had the same been unobstructed, was not a circumstance decisive of the case. If before then the creek was wholly obstructed by the defendant, and the water

of the stream was prevented by him from flowing to the plaintiff's land, by reason whereof he was deprived of the use of the water, and thus suffered damages, he had just cause of complaint, and was entitled to relief and to the remedy which he sought to prevent the continuance of the injury. Though the defendant had the right to use the stream for watering his cattle and for household purposes, he had not the right under the circumstances to dam up the creek and spread out the water over a large surface, by which it would become lost by absorption and evaporation to an extent to prevent the stream from flowing to the plaintiff's premises, as it would have done had it not been for the defendant's dams. It cannot be held in this case that the obstruction and diversion of the water of the creek was necessary to the proper and beneficial use of the stream by the defendant, and that as a consequence the injury sustained by the plaintiff was *damnum absque injuria.* The facts found by the Court preclude such a conclusion. From the facts found the plaintiff was entitled to judgment, on the ground that he had the right to the water of the creek in the natural flow, subject only to the use thereof by the defendant in a reasonable manner, without unnecessary obstruction or diminution. (Angel on Watercourses, Chapter 4, and the authorities therein cited.)

The judgment must be and is hereby reversed, and the cause remanded to the Court below with directions to enter judgment for plaintiff.

Neither Mr. Chief Justice SANDERSON nor Mr. Justice SAWYER expressed any opinion.