[Sac. No. 6438. In Bank. Feb. 7, 1957.]

FRANCIS W. HUDSON et al., Appellants, v. THOMAS WEST et al., Respondents.

826

Bradford, Cross, Dahl & Hefner and Loren S. Dahl for Appellants.

Henry Holsinger, Gavin M. Craig and Hugh W. Ferrier as Amici Curiae on behalf of Appellants.

Hughes, Maul & Fogerty and Geoffrey A Hughes for Respondents.

TRAYNOR, J.—By this action plaintiffs sought to confirm their right to take four inches of water from Grub Ravine during the irrigation season and to enjoin defendants' interference with that right. Defendants denied plaintiffs' right to take water, alleged their own prescriptive right to take all the water flowing through their land in Grub Ravine, and prayed that their own right be quieted against the claims of plaintiffs. The trial court entered judgment providing that plaintiffs take nothing by their action, that defendants are the owners of all waters flowing on or upon their land, and that

defendants' title to said water be quieted as against the claims of plaintiffs. Plaintiffs appeal.

It is contended on behalf of plaintiffs that they proved rights as riparian owners, that the evidence will not support a judgment that defendants have acquired a prescriptive right to take all the water flowing through defendants' land in Grub Ravine, and that in any event the judgment affirmatively quieting defendants' title is erroneous because defendants did not cross-complain. It is contended on behalf of defendants that plaintiffs not only did not properly allege but failed to prove a riparian right, that having failed to prove their own right to take water, plaintiffs may not complain of a judgment confirming defendants' water right, and that in any event the evidence is sufficient to support a judgment that defendants acquired a prescriptive right to take all the water flowing through their land in Grub Ravine during the irrigation season.

On appeal, counsel for the state Department of Public Works, Division of Water Resources, filed an amicus curiae brief in which they attack the judgment, contending that there is no evidence in this case that defendants complied with the statutory procedures concerning the appropriation of water (Wat. Code, §§ 1200-1801) and that without such compliance no prescriptive right to use water may be acquired in this state. The parties have not raised this issue, however, and the judgment quieting title in defendants prejudices no right of the state of California, for neither it nor the Department of Public Works was a party to this action. (See Wat. Code, § 1052.)

*The Judgment is Not Erroneous Because of Defendants' Failure to Cross-Complain.*

If the judgment is otherwise proper, it is not erroneous because of defendants' failure to cross-complain. Defendants denied plaintiffs' right to take water, asserted their own water right, and prayed that their right be quieted against plaintiffs' claims. In a suit to quiet title, when the defendant denies the plaintiff's title, asserts his own title, and prays for affirmative relief, the defendant's title may properly be quieted though his pleading is not technically a cross-complaint. (*Talbot* v. *Gadia*, 123 Cal.App.2d 712, 721 [267 P.2d 436] ; *Rinker* v. *McKinley*, 65 Cal.App.2d 109, 111 [149 P.2d 859].)

*Even if Plaintiffs' Pleadings Contained Sufficient Allegations to Place Riparian Rights in Issue, Plaintiffs Did Not Prove a Right to Take Water as Riparians.*

One who relies upon a riparian right must plead: (1) the riparian character of his land, (2) the quantity of water or the proportion of the stream to which he claims to be entitled as a riparian owner, and (3) the location of his land with respect to the land of the other party. (*Riverside Water Co.* v. *Gage,* 89 Cal. 410, 420-421 [26 P. 889] ; *San Luis Water Co.* v. *Estrada,* 117 Cal. 168, 182-183 [48 P. 1075] ; *Wutchumna Water Co.* v. *Pogue,* 151 Cal. 105, 112 [90 P. 362] ; *Montecito Valley Water Co.* v. *Santa Barbara,* 151 Cal. 377, 378 [90 P. 935].) It has been said that the pleader should also allege the quantity of his irrigable riparian land (*Wutchumna Water Co.* v. *Pogue, supra*; *Montecito Valley Water Co.* v. *Santa Barbara, supra*), but since that fact is important only as evidence of the amount of water to which the riparian owner is reasonably entitled, it is more properly a matter for proof than pleading.

Plaintiffs alleged in their first amended complaint as amended by a pleading entitled "second amended complaint," that they are the owners of certain described land and of a water right "appurtenant" thereto; that they have been in possession thereof and paid taxes thereon for more than five years; that said water right of four inches has its source in Grub Ravine; that Grub Ravine is a natural watercourse; that the water flowing in Grub Ravine has its source on land above that of defendants and that said water flows from defendants' land, through intervening land, onto the land of plaintiffs; and that defendants' land is at an elevation higher than that of plaintiffs.

It is apparent that plaintiffs sufficiently alleged the location of their land with respect to the land of defendants. They claim to be owners of land downstream from defendants' land. It is also clear that plaintiffs claim the right to take "four inches" of water. Although without further qualification "four inches" is an indefinite quantity of running water, in the absence of a special demurrer for uncertainty, plaintiffs sufficiently alleged the quantity of water that they claim the right to use.

The remaining question is whether plaintiffs sufficiently alleged the riparian character of their land. The riparian character of land may be pleaded in either of two ways: (1) by alleging the existence of ultimate facts, which if

proved would establish the land as riparian or (2) by alleging generally that the land is riparian to a stream or natural watercourse. ▮ Although the latter allegation is conclusional, it is sufficient to indicate to the other party the nature of the pleader's claim and is analogous to the commonly accepted general allegations of ownership and negligence.

▮ In *Rancho Santa Margarita* v. *Vail*, 11 Cal.2d 501, 528-529 [81 P.2d 533], it was held that three things must be proved to establish land as riparian in character: (1) some part of the land must be shown to be contiguous to a stream or natural watercourse; (2) the land for which water is claimed must be shown to be within the watershed of the stream (*Bathgate* v. *Irvine*, 126 Cal. 135, 143 [58 P. 442, 77 Am.St.Rep. 158]); (3) the land for which water is claimed must be shown to be part of the smallest tract held under one title in the chain of title leading to the present owner, that is that the land's riparian status has not been lost by severance (*Boehmer* v. *Big Rock Irr. Dist.*, 117 Cal. 19 [48 P. 908]). It follows that one who attempts to plead the riparian character of his land by specific allegations must plead the existence of the foregoing facts. ▮ Plaintiffs allege that their land is traversed by a natural watercourse, but their pleadings contain no allegation that any land for which water is claimed is within the watershed of the watercourse, nor is there any allegation touching the matter of severance. It is apparent, therefore, that plaintiffs' specific allegations are insufficient to place in issue the riparian character of their land.

The question arises whether plaintiffs' allegation that they own land and a water right "appurtenant" thereto may be construed as a general allegation of the riparian character of plaintiffs' land. Such an allegation has been held to be indicative of a right by prescription (*Morgan* v. *Walker*, 217 Cal. 607, 608 [20 P.2d 660]; see 26 Cal.Jur. 209, § 414), but a riparian water right has also been described as "appurtenant" in recent cases. (See *City of Pasadena* v. *City of Alhambra*, 33 Cal.2d 908, 925 [207 P.2d 17].) Even if an allegation of ownership of land contiguous to a natural watercourse and of a water right appurtenant to the land, liberally construed (Code Civ. Proc., § 452; see *Matteson* v. *Wagoner*, 147 Cal. 739, 742 [82 P. 436]; *Toney* v. *Security-First Nat. Bank*, 108 Cal.App.2d 161, 167 [238 P.2d 645]), would be sufficient to place in issue the riparian character of the plead-

er's land, plaintiffs did not prove a right to take water as riparians.

Although the riparian character of land may be put in issue by a general allegation, to prove that land is riparian it is necessary, as previously noted, to show that: (1) some part of the land is contiguous to a stream or natural watercourse; (2) the land for which water is claimed is within the watershed of the stream; and that (3) the land for which water is claimed is part of the smallest tract held under one title in the chain of title leading to the present owner. (*Rancho Santa Margarita* v. *Vail, supra,* 11 Cal.2d 501, 528-529 and cases cited; see Kinney on Irrigation and Water Rights, 2d ed., vol. 1, pp. 794-795, § 466.) Plaintiffs proved that they are the owners of land through which a natural watercourse runs. They introduced no evidence, however, to show that any of their land for which water is claimed is within the watershed. Furthermore, although they traced their title back to a deed of 1890 by which the owner of some 120 acres conveyed the 4-acre tract that they now own, plaintiffs offered no evidence of the state of the title to this tract prior to 1890. Plaintiffs proved only one of the three facts it was incumbent upon them to prove, namely, that their land is contiguous to a natural watercourse. Proof of that fact alone does not establish the riparian character of plaintiffs' land, nor does it entitle plaintiffs to any water as riparian owners. (*Rancho Santa Margarita* v. *Vail, supra,* 11 Cal.2d at 528-529; *Riverside Water Co.* v. *Gage, supra,* 89 Cal. at 420-421; *San Luis Water Co.* v. *Estrada, supra,* 117 Cal. at 172-173, 182-183; *Wutchumna Water Co.* v. *Pogue, supra,* 151 Cal. at 111-112.)

*Having Failed to Prove Their Own Right to Take Water, Plaintiffs May Not Complain of a Judgment Confirming Defendants' Water Right.*

In *Warden* v. *Stoll*, 210 Cal. 374, 377 [291 P. 835], it was held: "A simple judgment in a quiet title action in favor of the defendant, that is that plaintiff take nothing by his said action and that defendant recover his costs, operates as an estoppel upon the plaintiff and determines title as between the parties and protects the defendant against any claim of the plaintiff as fully as would an affirmative decree in his favor. [Citations.] The insertion, therefore, in the decree in this action of a provision awarding the respondents affirmative relief against the appellant, while erroneous, does not prejudice the appellant in any of her substantial rights

and may be regarded as surplusage." This rule is well settled. (*California Bank* v. *Traeger,* 215 Cal. 346, 349-351 [10 P.2d 51]; *Allen* v. *McGee,* 54 Cal.App.2d 476, 485-486 [129 P.2d 143]; *Wagner* v. *Worell,* 76 Cal.App.2d 172, 182-183 [172 P.2d 751]; and see generally, *White* v. *Lantz,* 126 Cal.App. 693 [14 P.2d 1041] and authorities there cited.) Moreover, it derives additional support from section 581c of the Code of Civil Procedure, which provides that when a plaintiff fails to prove his case and a judgment of nonsuit is entered against him, the judgment is an adjudication upon the merits unless the court provides to the contrary.

 It is fundamental that a party who would quiet his title must prevail, if at all, on the strength of his own title and not on the weakness of the claims of an adversary. (*Helvey* v. *Sax,* 38 Cal.2d 21, 23 [237 P.2d 269].) The record in this case discloses that plaintiffs failed to prove any right to take water from Grub Ravine, and it was therefore properly adjudged that they take nothing by their action. By that judgment plaintiffs and their successors are forever barred from again asserting against defendants or their successors claims, made or which could have been made, to the water right that is the subject of this action. Plaintiffs are not harmed, therefore, by a judgment confirming defendants' right to take all the water flowing through their land in Grub Ravine during the irrigation season and may not challenge the sufficiency of the evidence to support such a judgment. (*Allen* v. *McGee, supra.*)

 The judgment entered by the trial court, however, is too broad in providing that defendants are the owners of all waters arising on, or flowing on, or upon, their land. The record discloses that the subject of this action was the right to take water from Grub Ravine during the irrigation season. The right to take water during the remainder of the year was not litigated. The judgment is modified, therefore, to limit defendants to the right to use all the water flowing through their land in Grub Ravine during the irrigation season. As so modified the judgment is affirmed. Plaintiffs shall bear the costs of this appeal.

Gibson, C. J., Carter, J., and Spence, J., concurred.

CARTER, J.—I concur in the judgment of affirmance and in the reasoning in the majority opinion with the exception of the inference which might be drawn therefrom that a

riparian right may be pleaded by simply alleging the ownership of land situated on a natural stream or watercourse and the ownership of a water right from said stream as being appurtenant to said land. It is my opinion that such a pleading would not be sufficient to raise an issue of riparian ownership or the existence of a riparian right. (See *Riverside Water Co.* v. *Gage,* 89 Cal. 410, 420 [26 P. 889] ; *Wutchumna Water Co.* v. *Pogue,* 151 Cal. 105, 112 [90 P. 362] ; *San Luis Water Co.* v. *Estrada,* 117 Cal. 168, 182 [48 P. 1075] ; *Creighton* v. *Evans,* 53 Cal. 55; *Montecito etc. Co.* v. *Santa Barbara,* 151 Cal. 377 [90 P. 935] ; *Title Ins. etc. Co.* v. *Miller & Lux, Inc.,* 183 Cal. 71 [190 P. 433] ; *Strong* v. *Baldwin,* 154 Cal. 150 [97 P. 178, 129 Am.St.Rep. 149] ; *Rancho Santa Margarita* v. *Vail,* 11 Cal.2d 501, 528-529 [81 P.2d 533].) It appears to be the settled law of this state that the riparian right, or the right of a riparian owner to have his portion of the water flowing in the stream past his riparian land, is not an easement or an appurtenance, but a part and parcel of the land itself. (26 Cal.Jur., pp. 209-210, §§ 414, 415; *Lux* v. *Haggin,* 69 Cal. 255 [4 P. 919, 10 P. 674] ; *Ferrea* v. *Knipe,* 28 Cal. 340 [87 Am.Dec. 128] ; *Stanford* v. *Felt,* 71 Cal. 249 [16 P. 900] ; *Miller & Lux* v. *Enterprise Canal & Land Co.,* 169 Cal. 415 [147 P. 567] ; *Anaheim Union Water Co.* v. *Fuller,* 150 Cal. 327 [88 P. 978, 11 L.R.A.N.S. 1062] ; *Miller & Lux* v. *Madera Canal etc. Co.,* 155 Cal. 59 [99 P. 502, 22 L.R.A.N.S. 391] ; *Herminghaus* v. *Southern Calif. Edison Co.,* 200 Cal. 81 [252 P. 607] ; *Fall River Valley Irr. Dist.* v. *Mt. Shasta Power Corp.,* 202 Cal. 56 [259 P. 444, 56 A.L.R. 264].) The rule as above stated has been restated in innumerable decisions of this court and the appellate courts of this state and the only case in which the riparian right has been referred to as being appurtenant to the land on which it is used is the recent case of *City of Pasadena* v. *City of Alhambra,* 33 Cal.2d 908 [207 P.2d 17]. This case, however, did not involve the riparian right doctrine and no issue involving riparian rights was considered or decided in that case. It may be said, therefore, that the statement in the majority opinion in that case that "Generally speaking, an overlying right, analogous to that of a riparian owner in a surface stream, is the right of the owner of the land to take water from the ground underneath for use on his land within the basin or watershed; the right is based on ownership of the land and is appurtenant thereto," is mere dictum. It is not supported by any of the cases cited in the

opinion in that case and I have found no other case decided by either this court or any of the appellate courts of this state in which the riparian right has been referred to as being appurtenant to the land on which it is used. On the other hand the authorities are uniform in holding that a water right acquired by prescription, appropriation, adverse user or parol license may properly be pleaded by alleging that such a right is appurtenant to the land on which it is used. (26 Cal.Jur., pp. 209-210, §§ 414, 415; *Estate of Thomas,* 147 Cal. 236 [81 P. 539]; *Miller & Lux, Inc.* v. *J. G. James Co.,* 179 Cal. 689 [178 P. 716]; *Verdugo Canon Water Co.* v. *Verdugo,* 152 Cal. 655 [93 P. 1021]; *McDonald* v. *Bear River & Auburn W. & Min. Co.,* 13 Cal. 220; *Rianda* v. *Watsonville Water etc. Co.,* 152 Cal. 523 [93 P. 79]; *American Co.* v. *Bradford,* 27 Cal. 360; *Irrigated Valleys L. Co.* v. *Altman,* 57 Cal.App. 413 [207 P. 401].)

In my opinion a litigant in a case involving water rights is entitled to know whether his opponent is claiming the right to use water on his land as a riparian owner or is claiming that his right to the use of water is predicated upon prescription, appropriation, adverse user, parol license or other sources of title. This knowledge can be gained only by an allegation in a pleading that the claimant is relying upon his right as a riparian owner. The elements of this right are properly set forth in the majority opinion, and I agree with the majority in its statement that a riparian right may be pleaded by either alleging all of the factors necessary to establish that right or by pleading the riparian character of his land in general terms; that is, by pleading ownership of specifically described land adjacent to a natural stream or watercourse and specific allegations that said land is riparian to said stream or watercourse and that the owner has the right to devote a specific quantity of water from said stream to a beneficial use on said land as a riparian owner. The elements which are necessary to support the allegation of riparian ownership may be established by proof as correctly set forth in the majority opinion.

I would be disposed to hold, however, that although a riparian right was not properly pleaded, if the proof offered was sufficient to establish the elements of a riparian right and the case were tried on the theory that a riparian right was involved, a judgment based upon the riparian right theory should be sustained. Such, however, is not the

situation in this case. Here, there is no allegation in any of the pleadings and no statement in the findings or judgment which would support the riparian right doctrine. Neither is there any evidence which in the slightest degree supports the elements necessary to establish riparian ownership in either of the parties hereto or the right of either of said parties to make a riparian use of water. In fact, the only mention of the riparian right doctrine was in a colloquy between court and counsel and it is clear that neither party to this action had any thought of basing his claim to a water right upon the doctrine of riparian rights. It is clear, therefore, that there is no issue pertaining to riparian rights in this action.

The dissenting opinion of Mr. Justice Schauer in this case is based upon the assumption that the riparian right issue is involved in this case and that the controversy between the parties involves the right to store and impound water. Both of these assumptions are erroneous. From what I have heretofore stated it is obvious that the riparian right issue is not involved in this case. With respect to the question of the right to store or impound water, plaintiff alleged in his second amended complaint: ''V. That on or about October, 1949, the defendants West herein constructed, across the said ravine, a dam of earth in excess of about fifteen feet in height, and that said dam constructed on the lands of defendants has stopped the flow of water as it was wont to flow from and across the lands of defendants through the intervening lands onto the lands of plaintiffs; that the defendants West herein have taken, used and diverted all of the water flowing in said water course and that the plaintiffs herein have not been able to use any water from said ravine or watercourse by reason of the fact that the defendants West did construct said dam and did take, use and divert said water.

''VI. That said dam constructed by the defendants is in direct contravention of the Water Code of the State of California and particularly Section 6003 thereof; that said dam, as now constructed, constitutes a hazard, in that in the event said dam would burst or become destroyed by flood or otherwise, the lands and the improvements thereon belonging to plaintiffs would be irreparably injured and damaged by flooding.'' At the trial the undisputed evidence disclosed that in 1950 defendant constructed a dam on his property across Grub Gulch or Red Ranch Ravine. The dam was 15 feet high, about 55 feet long on top and 30 feet on the bottom. The maximum depth of the water in the dam was about 8

feet and it backed the water up about 60 feet. The maximum capacity of the reservoir created by the dam was about 2 acre feet of water. The purpose of constructing the dam was to impound the very small flow of water in the ravine which defendant had previously diverted by means of a ditch, flume and pipe line to his land for the purpose of irrigating his orchard. This flow was determined by the only measurement made to be 1½ miner's inches of water. After defendant constructed his dam, he pumped water out of the reservoir for the irrigation of his orchard instead of diverting it as he did previously by means of a ditch, flume and pipe line.

Neither the plaintiff nor the defendant has alleged or made any claim that the dam constructed by defendant was for the purpose of impounding water during the rainy season for use during the irrigation season and it is obvious that the reservoir behind the dam is not of sufficient capacity to store a sufficient quantity of water to irrigate any considerable area of land. We may take judicial notice that 2 acre feet of water would not be sufficient to irrigate even 2 acres of land during the irrigation season in the locality where defendant's land is situated. The record discloses that defendant owns approximately 25 acres of land which is devoted to an orchard and that he found it more practical to impound the small flow of water flowing in the ravine above his reservoir so that he could more efficiently use it to irrigate his orchard.

As stated in the majority opinion defendant makes no claim to the use of any water from the ravine during the non-irrigation season and the evidence shows that the water in the ravine would flow through the spillway of the dam during the nonirrigation season and on down the ravine. In fact, the plaintiff complained that the dam constituted a hazard to his property because it might fail and the increased flow of water from the reservoir would damage his property. The trial court found against this contention.

The undisputed evidence showed that the irrigation season extended from May to October and that during the rest of the year there was so much water flowing down the ravine that it was a menace to plaintiff's property and one of the issues raised by his complaint was that the dam constructed by defendant in the ravine accentuated that menace and for this reason he wanted the dam abated.

The trial court wrote a memorandum opinion in which he stated that plaintiff had not made out a case because he had not proven that he had used any given quantity of water

from the ravine, that prior to the installation of the steel syphon in the ditch of the El Dorado Irrigation District plaintiff had undoubtedly received sufficient water for his needs from the leaky wooden syphon and the spring on the Clark property which was located between the property owned by plaintiff and defendant.

The court made findings of fact to the effect that defendant had used all of the water which flowed from the Jones property continuously for more than five years and that no water flowed from defendant's property to plaintiff's property; that the dam was not a menace or hazard to plaintiff's property and that defendant had not violated plaintiff's right by building the dam and impounding the water behind it. The court quieted defendant's title to his land and all of the water flowing in the ravine above his dam and denied plaintiff any relief.

I agree with the majority that the judgment should be modified by limiting defendant's use of all of the water flowing in the ravine to the irrigation season, as it is conceded that neither he nor plaintiff has any use for water for irrigation during the nonirrigation season.

SCHAUER, J., Dissenting.—The majority opinion avoids rather than answers the basic questions presented by this appeal, which questions have been the subject of extended study and debate among the justices of this court. I respectfully differ with them in at least three significant aspects of their action: (1) As to the tenability of the ground on which they make present disposition of the appeal; (2) as to the wisdom and practicality of this court's undertaking (instead of reversing and remanding to the trial court) to itself revise and delimit the trial court's judgment purporting to quiet title to "all waters . . . flowing on" defendants' property; and (3) as to the implied determination that present avoidance of the real issues is the better administration of justice. (See Code Civ. Proc., § 53.) I am not sure to what extent, if any, I differ with the majority as to the law which should govern the important questions which have been debated but are not decided because I do not know in sufficient detail what the majority's holdings would be. This I do know; their opinion leaves unanswered the following questions which are important:

1. Under the majority holding do the defendants have the absolute right to impound and store behind their dam *all*

*water* or *any water* flowing in the Grub (sometimes called Red Ranch) Ravine during the *nonirrigation* season for use *during the dry season?*

2. If not, of what avail to defendants is the judgment, since their proof was that *for more than five years* before building the dam they already had been *using* on their land *during the irrigation season all waters* flowing in the ravine?

3. If the majority intend to give defendants the right to impound and store *all* or *any* waters flowing in the ravine *during the nonirrigation season* for use during the dry season, where in the record, and what, is the evidence (necessarily showing *five years' adverse user during the nonirrigation season*) to support such award?

4. If the majority intend that defendants shall have the right to impound and store above their dam during the nonirrigation season a part but not all of the waters then flowing in the ravine, what and where is the workable standard or measure which shall govern the defendants in their taking and plaintiffs in their demands?

Since the majority have seen fit not to resolve or even discuss the above noted questions, a much more full statement of the issues which have been debated in this case, and of my views thereon, is indicated.

This is a typical water rights controversy. Defendants (upper owners) became the original aggressors when they built a dam on their land and cut off the natural flow of water in the ravine leading to plaintiffs' (lower owners) property. Plaintiffs as a defensive and retaliatory move then instituted the subject proceeding seeking injunctive relief and to have their title to a fixed amount of water quieted. Defendants answered and themselves sought and were awarded affirmative relief. Plaintiffs appeal from the judgment which purports not only to deny the relief they sought but also to quiet title in defendants to their described real property in the county of El Dorado, together with "all ditches, water ways and watercourses, of whatsoever kind or character situate upon said real property, and all waters arising on, or flowing on, or upon, the said real property."

Ownership of the several parcels of land by the respective parties, as established by the findings of fact, is not in dispute. Hence it follows that (in respect to the water here in dispute) such respective parties are, prima facie, entitled to whatever presumptions of ownership of water the law attaches to the ownership of the land over which the water flows in the cir-

cumstances disclosed by the evidence. The judgment in defendants' favor as to the water is based on their claim of a prescriptive right thereto. Defendants' claim of title by prescription is new matter on which they had the burden of proof. Plaintiffs attack the judgment principally on the ground that the evidence fails to establish adverse user by defendants for the statutory period.

It is to be emphasized that in considering the issues presented by plaintiffs' appeal the problem is not whether plaintiffs established any right to the quiet title and injunctive relief which they themselves sought, but, rather, whether the judgment decreeing affirmative relief in favor of defendants, by which their title to water in a much more inclusive scope than they had asserted before building the dam is declared and quieted against plaintiffs, may stand, or should be reversed.

As acknowledged in the majority opinion, ''It is fundamental that a party who would quiet his title must prevail, if at all, on the strength of his own title and not on the weakness of the claims of an adversary.'' (See *Helvey* v. *Sax* (1951), 38 Cal.2d 21, 23 [237 P.2d 269]; *Peabody* v. *City of Vallejo* (1935), 2 Cal.2d 351, 381 [40 P.2d 486].) That rule is properly applied in the majority opinion as against plaintiffs here, and supports the determination that they take nothing on their complaint, but the opinion fails to make evenhanded application of the rule as against defendants when the latter assume the legally equivalent status of plaintiffs in asserting their claim to quiet their alleged title. Just as fundamental as the strength [burden] of proof rule above stated is the rule that the character of a pleading is to be determined by its substance rather than by the designation appended to it. (*Pickwick Stages* v. *Board of Trustees* (1922), 189 Cal. 417, 419 [2] [208 P. 961]; *Terry Trading Corp.* v. *Barsky* (1930), 210 Cal. 428, 434 [8] [292 P. 474]; *Zarillo* v. *LeMesnager* (1921), 51 Cal.App. 442, 444 [3] [196 P. 902]; *Keenan* v. *Dean* (1955), 134 Cal.App.2d 189, 194 [5] [285 P.2d 300].)

Following the above stated rule, I agree with the majority that upon a sufficient showing of adverse use defendants' title to the water ''may properly be quieted though his [their] pleading is not technically [denominated] a cross-complaint.'' As stated in *County of Los Angeles* v. *Hannon* (1910), 159 Cal. 37, 48 [112 P. 878, Ann.Cas. 1912B 1065], when a de-

fendant in his "answer denies title in plaintiff and alleges that he is the owner in fee" of the disputed property, "In effect his answer is in the nature of a cross-complaint to quiet his alleged ownership of this property." Certainly, as the above quoted authorities make abundantly clear, defendants are not to be deprived of any *proven* right merely because they failed to label the pleading of their affirmative claim a "cross-complaint." But the defendants should not, as the majority do for them, give their pleading the character of a cross-complaint to attain its benefits but disavow that character to avoid its burdens.

A simple quiet title proceeding (which is the nature of the quiet title right asserted by defendants) is regarded as a suit in equity, and the issue of title is an equitable one. (See *Thomson* v. *Thomson* (1936), 7 Cal.2d 671, 681 [1] [62 P.2d 358, 117 A.L.R. 1].) Certainly if ordinary fairness is important in equity, the quoted rule that a party must prevail, if at all, only on the strength of his own title, should be applied equally as against defendants here in respect to their cause of action for equitable relief on their "in effect . . . cross-complaint to quiet [their] alleged" title by prescription to "all waters . . . flowing on, or upon" their land. Applying the subject rule, I cannot agree with the majority holding that "Having Failed to Prove Their Own Right to Take Water, Plaintiffs May Not Complain of a Judgment Confirming Defendants' Water Right." Plaintiffs here may, and do, properly complain of that portion of the judgment (decreeing title by prescription in defendants to *all waters* flowing in the ravine) which goes beyond determination of the issues *made by plaintiffs' complaint* and so much of defendants' answer *as relates to defeating plaintiffs' claims.* The judgment as entered goes far beyond the scope of the issues tendered by plaintiffs, and far beyond any possible support in the evidence.

Looking deep in the record it appears probable that the mischief in this case arises from the fact that the trial court apparently was persuaded, after submission of the cause and after it initially determined the decision it would make on the evidence and the law, to enlarge the scope and character of its intended judgment. The memorandum decision of the court states that "the plaintiffs should not recover and the defendants should recover their costs. The defendants will prepare, serve and file proposed findings and form of judg-

ment in accordance herewith."[1] Nowhere in that memorandum decision does the court mention or suggest that judgment will be rendered for defendants quieting their title to the disputed *and to undisputed* water as against plaintiffs, but only that defendants should recover their costs. Moreover, the court's review of the evidence, in such memorandum decision, appears to be with a view to deciding whether *plaintiffs* are entitled to the relief they sought, rather than of determining defendants' affirmative cause of action.

But legally the court had the power to change its mind, and presumptively did. The judgment finally entered quiets title in defendants to "all ditches, water ways and water courses, of whatsoever kind or character situate upon [defendants'] said real property, *and all waters arising on, or flowing on, or upon, the said real property,*" (italics added) and adjudges that plaintiffs have no right, title, estate or interest therein.

It is not in the denial of relief to plaintiffs, but in the affirmative judgment quieting title to "all waters," etc., in defendants, that the court on this record is shown to have erred. A scrutiny of that record reveals that, as urged by plaintiffs, the evidence is insufficient to support defendants' claim of a prescriptive right to the water based on asserted adverse user for the statutory five-year period.

In conformity with the rule above stated, "that a party who would quiet his title must prevail, if at all, on the strength of his own title and not on the weakness of the claims of an adversary," the burden was on defendants, with respect to their claim for affirmative relief quieting their title to the disputed water, to prove their own title thereto. The evidence fails to support such affirmative relief in the hereinafter developed respects.

The record shows that plaintiffs and defendants each own land near Smithflat, El Dorado County. Defendants' land is at a higher elevation than that of plaintiffs. The ravine here involved was alleged by plaintiffs and found by the trial

---

[1]The memorandum decision also states that "The plaintiffs have made no measurements of water which flowed from the lands of the defendants before the dam was built. . . . It is possible to guess . . . that the dam reduced the flow of the water, but there is no credible evidence in what quantity it reduced the flow . . . To grant plaintiffs relief . . . would require a decree that the defendants release water in a stated quantity . . . This cannot be done from the evidence . . . except by an arbitrary guess . . ."

court to be a natural watercourse.[2] This finding is supported by abundant evidence,[3] which also shows that the ravine has its source in springs on land owned by one Jones, which is adjacent to and at a higher elevation than defendants' land. There is also evidence, although disputed, that such springs are likewise the source of natural water flowing in the ravine and through defendants' land down to plaintiffs' land.[3] Such ravine or watercourse, as also found by the court,[2] lies between the lands of plaintiffs and defendants and extends in a general westerly direction from defendants' land, through the land of one Clarke, and thence to plaintiffs' land. As further found by the court, defendants, in October, 1950, built a dam within the ravine and upon their lands.[4]

Under normally applied rules of construction the above epitomized findings should be accepted as establishing that

---

[2]Finding No. II: ''That Grub Ravine, sometimes known as Red Ranch Ravine, is a natural water course lying between the real properties owned by the parties to this action and extends in a general Westerly direction from the lands of the defendants to the lands of the plaintiffs.''

[3]Deacon Jones testified that ''the actual beginning of the . . . [ravine is] up near the north side of our ranch,'' on which there are three springs ''that lead into Red Ravine or this gulch or water course that we are talking about''; that ''after and before the irrigation season . . . the waters of . . . these springs feed into this ravine . . . [but] during the irrigation season . . . I use it all.''

Plaintiff testified that the water in the ravine originates ''about a mile above'' his land and has ''its source in natural springs''; that there was no ''water that came onto'' his place ''from any source . . . that connects with this ravine . . . other than the thread of this ravine'' and other than occasional leakage from the irrigation ditch prior to replacement of the syphon in 1950.

Mr. McKinsey, residing in the vicinity, testified that the ravine is ''a natural water course'' which has its source in ''an enlarged spring at the top of the hill, or almost to the top of the hill . . . on Deacon Jones' place''; that ''the springs . . . on Deacon Jones' property . . . is . . . the source of the water flowing in the . . . [ravine], down to Mr. Hudson's [plaintiff's] property.''

Mrs. Williams, who resided on plaintiffs' property from 1944 to 1947, testified that during such period she and her husband got ''plenty of water all the time [out of the ravine] for our horses and our milk cows'' and for their garden, and ''I just supposed it was natural, because it ran all the time.''

Mr. Estey, a prior owner, during 1925-1926, of plaintiffs' property, testified that during such period he used water that ''Come down that ravine. It is a natural run-off from that hill''; that the water flowing in the ravine is from a ''couple of big springs up there'' on Deacon Jones' land plus ''very little'' seepage water from such land; that there are no other canyons carry water which runs into the ravine during the summertime (the irrigation season).

[4]Finding No. III: ''That in the month of October, 1950, the defendants constructed within the said Grub Ravine, also known as Red Ranch Ravine, and upon the lands of the defendants an earthen dam.''

both plaintiffs' and defendants' lands are riparian to the watercourse.[5] As declared in *Seneca Consol. Gold Mines Co.* v. *Great Western Power Co.* (1930), 209 Cal. 206, 215 [287 P. 93, 70 A.L.R. 210], "The riparian doctrine comes down to us from the common law and it has been repeatedly defined in this state; hence little time need be spent in recounting the holdings of the courts in this regard. A few citations will suffice.

" '. . . Every owner of land, through which a natural stream flows, has a usufruct in the water of the stream as it passes along, and has an equal right with those above and below him to the natural flow of the water in its accustomed channel, at its usual level, without unreasonable detention or substantial diminution in quantity or quality, and that none of the owners can make any use of it prejudicial to the rights of the other owners, unless he has acquired a right to do so by license, grant, or prescription.' [Citations.]" (See also *Wright* v. *Best* (1942), 19 Cal.2d 368, 382 [121 P.2d 702]; *Rancho Santa Margarita* v. *Vail* (1938), 11 Cal.2d 501, 528-529 [81 P.2d 533]; *Gin S. Chow* v. *City of Santa Barbara* (1933), 217 Cal. 673, 684-690, 695-697, 706 [22 P.2d 5]; *Weck* v. *Los Angeles County Flood Control Dist.* (1951), 104 Cal.App.2d 599, 609 [232 P.2d 293].)

And in *City of Pasadena* v. *City of Alhambra* (1949), 33 Cal.2d 908, 925 [207 P.2d 17], the court declares, speaking through Mr. Chief Justice Gibson, that "Generally speaking, an overlying right, analogous to that of a riparian owner in a surface stream, is the right of the owner of the land to take

[5]I agree with the majority (if such be the intended holding) that plaintiffs' pleadings are sufficient to place riparian rights in issue. To hold otherwise would be to impose far stricter rules on the construction of pleadings than is currently permitted under our code system. (See Code Civ. Proc., § 452; *Faulkner* v. *California Toll Bridge Authority* (1953), 40 Cal.2d 317, 328 [253 P.2d 659]; *Mix* v. *Yoakum* (1927), 200 Cal. 681, 687 [254 P. 557].)

It may be noted in this connection that plaintiffs allege in their second amended complaint that they "are the owners of a certain water right, which said water right is appurtenant to the real property owned by plaintiffs herein, and the source of said water right . . . is Grub Ravine, also known as Red Ranch Ravine. That said ravine is a natural water course, and the waters therefrom flow onto the lands of plaintiffs, across intervening lands, from the lands of defendants and have their source on lands above the lands of defendants." And in their original complaint and first amended complaint (indicating that the riparian nature of their claim has been an issue since the very inception of the action) they allege that their water right is "appurtenant to" and "an appurtenance to" their land. (See *City of Pasadena* v. *City of Alhambra* (1949), 33 Cal.2d 908, 925 [207 P.2d 17].)

water from the ground underneath for use on his land within the basin or watershed; the right is based on ownership of the land and *is appurtenant thereto.* [Citations.] The right of an appropriator depends upon an actual taking of water. [Citation.]'' (Italics added.) (See also *Peabody* v. *City of Vallejo* (1935), *supra,* 2 Cal.2d 351, 381-383.)

Defendants' dam, as above mentioned, was constructed in 1950. It impounded the water from the ravine. Plaintiffs commenced this action in 1951, contending that before construction of the dam they had procured water for irrigation purposes from the ravine, but that since such construction the ravine has dried up and they have been deprived of such water. The trial court expressly found that for more than five years preceding commencement of the action defendants had ''used all the waters arising on, or flowing on or upon . . . [defendants' land] *for beneficial purposes,* to wit, for *irrigating an orchard and pasture and for watering fowl and livestock* . . .,''[6] and as stated above, quieted title to all the water in defendants, with no reservation as to time or amount of taking. (Italics added.)

Plaintiffs-appellants (in the course of their argument) state that the ''questions of law involved are: Whether or not an upper riparian owner who, for five years, has used all of the water of a stream acquires a prescriptive right to the waters of said stream when the lower riparian owner has not made use of the water during the same period?''[7] The stated question is neither answered nor even discussed in the majority opinion. In my view the resolution of such question is material to proper disposition of the appeal.

Generally speaking, there are three ways in which rights to surface water have been acquired in California: 1. By acquiring land through or over which a natural watercourse flows, which ordinarily and presumptively carries with it the so-called riparian right (see cases, *supra*) analogous to the overlying water right (see *City of Pasadena* v. *City of Alhambra* (1949), *supra,* 33 Cal.2d 908, 925.)

2. By appropriation. Prior to adoption of the Water Commission Act of 1913 (now Water Code) first right to

---

[6]Finding No. VII.

[7]Petition for Hearing in the Supreme Court, page 2. Also, in the opening brief of Plaintiffs-Appellants, it is pointed out (pp. 11-12) that the springs which form the source of the water in the ravine ''are riparian to the ravine,'' and that ''This ravine goes through the property of plaintiffs.''

water, as between persons neither of whom had other or higher rights therein, was declared under the principle of prior appropriation to be in the one who first appropriated it (i.e., diverted it to nonriparian land or for nonriparian uses) for beneficial purposes. (See 26 Cal.Jur. 32-51, and cases there cited.) Under the act the Legislature placed the regulation of appropriation procedure in the hands of a water commission (now the Department of Water Resources, Wat. Code, § 22). In *Wood* v. *Pendola* (1934), 1 Cal.2d 435, 439 [35 P.2d 526], it is stated that ''The main purpose of the act is to regulate the right to appropriate and the issuance of permits for the appropriation of unappropriated waters of the state, through the administrative offices of a state water commission thereby created. The act defines what are or may become unappropriated waters subject to appropriation.'' (See also *Temescal Water Co.* v. *Department of Public Works* (1955), 44 Cal.2d 90, 95 [280 P.2d 1] ; *Bloss* v. *Rahilly* (1940), 16 Cal.2d 70, 75 [104 P.2d 1049].) And in *Meridian, Ltd.* v. *San Francisco* (1939), 13 Cal.2d 424, 450 [90 P.2d 537, 91 P.2d 105], the court declared that the act gives to the commission ''power to allow the appropriation for beneficial purposes of unappropriated water under such terms and conditions as in the judgment of the commission will best develop, conserve and utilize in the public interest the water sought to be appropriated. It should be the first concern of the court in any case pending before it and of the department in the exercise of its powers under the act to recognize and protect the interests of those who have prior and paramount rights to the use of the waters of the stream. The highest use in accordance with the law is for domestic purposes, and the next highest use is for irrigation. When demands on the stream for those and other recognized lawful purposes by riparians and appropriators are fully met and an excess of water exists, it is for the state to say whether, in the conservation of this natural resource in the interest of the public, the diversion [made by another] is excessive.'' (See also Wat. Code, §§ 101-106, 1052, 1201, 1225.)

3. By prescription. As against one with a prior or higher right to water, such as a riparian owner, an appropriator thereof can establish a prescriptive right to such water upon proof of the elements essential to the existence of such a right. Such elements include those customary in the case of other prescriptive claims: Actual, open and notorious user, hostile and adverse to the original owner's title, continuous

and uninterrupted for the statutory period, and under a claim of title in the claimant, *and not by virtue of another right.* The claimant must also show that his use of the amount of water he claims was for beneficial purposes. (See 25 Cal.Jur. 1156-1165, and cases there cited.) Although the law is clear that rival appropriators who seek as against each other to establish rights based on claims to previously unappropriated waters must now follow the regulations and procedures laid down by the Water Code (§§ 1200-1801), no case yet decided has determined whether or not, subsequent to adoption of the act of 1913, and particularly of the 1917 amendments thereto, a later appropriator who has not shown compliance with the procedure thereby laid down can obtain a prescriptive water right as against one whose rights are expressly recognized and saved by the statutory water law; i.e., riparian owners and "any appropriator of water to which he is lawfully entitled." (See Wat. Code, §§ 101, 1201, 1202, 1450-1456; *Temescal Water Co.* v. *Department of Public Works* (1955), *supra,* 44 Cal.2d 90, 106; 42 Cal.L.Rev. 219-242, "Prescriptive Water Rights in California and the Necessity for a Valid Statutory Appropriation.") Inasmuch as the majority opinion affirms in part the judgment quieting title in defendants—a title claimed by defendants to have been acquired solely by prescription through adverse use—it would seem that determination of the law on this question is material to the plaintiffs, and to the issues in this case. Furthermore, this issue of law is important generally to the people of California, and is not, in my concept of our duty in the premises, adequately disposed of in the majority opinion by the statement that "The parties have not raised this issue . . . and the judgment quieting title in defendants prejudices no right of the state of California."

It is clear from plaintiffs' pleadings[5]* and from a colloquy between court and counsel during the course of the trial of this cause[8] that plaintiffs were claiming a right to the water

---

*See footnote 5, *ante,* p. 842.

[8]Such colloquy was as follows: "THE COURT: Let me see if I understand your position here: There has got to be shown by the plaintiff, by the greater weight of the evidence, the acquiring of a water right by grant.

"MR. MILHAM [Counsel for Plaintiffs]: Color of title.

"THE COURT: To maintain that, Mr. Hughes, do you think they have to show actual use constantly and continuously?

"MR. HUGHES [Counsel for Defendants]: Yes, Your Honor.

"THE COURT: How about that, Mr. Milham? Do you agree?

"MR. MILHAM: A water right must, under our water code, or can be

either as riparian owners or under continuous user for a five-year period, or under both theories, and that the issue of riparian rights was in any event inherently in controversy as a necessary incident of determining whether either plaintiffs or defendants had established title to the claimed water by adverse use. As stated hereinabove, the ownership of the land here concerned is not in dispute. As also heretofore stated, the judgment in defendants' favor as to the water rests on their claim of a prescriptive right thereto, based on asserted adverse use thereof for the statutory five-year period prior to construction of their dam in 1950. And as further already noted, both plaintiff's and defendants' lands are shown to be presumptively riparian to the watercourse involved. Use of water in the proper exercise of riparian rights by an upper riparian owner (defendants) has long been understood to be not a use adverse to the rights of lower riparian owners (plaintiffs), and it is only as to water diverted by the upper owner to so-called ''improper'' or nonriparian uses, *such as the storage of water during the wet season to be used during the dry season,* that the use has been held to constitute an appropriation (rather than a riparian use) and so to be adverse. (See *Moore* v. *California Oregon Power Co.* (1943), 22 Cal.2d 725, 730-738 [140 P.2d 798]; *Seneca Consol. Gold Mines Co.* v. *Great Western Power Co.* (1930), *supra,* 209 Cal. 206, 214-219; *Colorado P. Co.* v. *Pacific G. & E. Co.* (1933), 218 Cal. 559, 564-565 [19 P.2d 598, 24 P.2d 495]; *cf. Peabody* v. *City of Vallejo* (1935), *supra,* 2 Cal.2d 351, 374 [14]; *Pabst* v. *Finmand* (1922), 190 Cal. 124, 128-130 [211 P. 11]; *Miller & Lux* v. *Enterprise Canal & Land Co.* (1915), 169 Cal. 415, 443 [147 P. 567].) In *City of Pasadena* v. *City of Alhambra* (1949), *supra,* 33 Cal.2d 908, 925-926, this court declared that ''The term 'appropriation' is said by some authorities to be properly used only with refer-

---

lost, if the Court please, by non-use, but if it is *riparian* and it hasn't been deeded away from a *riparian owner* by grant, a *riparian owner* does not lose by non-use. Now, that is the law. [Italics added.]

''Mr. Hughes: There is no claim in this amended complaint or the complaint at all about riparian rights.

''The Court: We will pass that point for the moment. The other one, other alternative, is to establish the right to it through the element of adverse possession, if you can.''

It will be recalled that it is not plaintiffs' claim, but the sufficiency of defendants' proof of title by adverse user, that is the critical point on this appeal. As developed in the text of the opinion, an upper riparian owner, if he is to establish a prescriptive right against a lower riparian owner, must show that his use of the water went beyond his own riparian rights.

ence to the taking of water from a surface stream on public land for nonriparian purposes. [Citations.] The California courts, however, use the term to refer to any taking of water for other than riparian or overlying uses. [Citations.] Where a taking is wrongful, it may ripen into a prescriptive right. . . . As between overlying owners, the rights, like those of riparians, are correlative and are referred to as belonging to all in common; each may use only his reasonable share when water is insufficient to meet the needs of all. [Citations.]" In other words, a mere riparian use by an upper owner of any or all of the water in a stream does not constitute an appropriation of the water.

The right of the lower riparian owner does not depend upon his own use or disuse of the right. As stated in *Stanford* v. *Felt* (1886), 71 Cal. 249 [16 P. 900], "[T]he right of the riparian proprietor to the flow of a stream is inseparably annexed to the soil and passes with it, not as an easement or appurtenance, but as part and parcel of it. Use does not create the right, and disuse cannot destroy or suspend it. The right of such proprietor extends to the natural and usual flow of all the water of the stream, unless when the quantity has been diminished as a consequence of the reasonable use or appropriation of it by other riparian owners for proper and legitimate purposes. (*Ferrea* v. *Knipe,* 28 Cal. 340 [87 Am.Dec. 128]; *Lux* v. *Haggin,* 69 Cal. 255 [4 P. 919, 10 P. 674].) The use by the riparian owner of the water for domestic purposes for irrigation and for the propulsion of machinery is recognized as proper and legitimate. This we regard as the law of this state. (See *Ferrea* v. *Knipe* and *Lux* v. *Haggin, supra.*) It appears to be law that where all the water of a stream is needed for domestic purposes and for watering cattle, and is thus consumed by one proprietor, the law allows such use.

"But in making such reasonable use of water, such proprietor must return the surplus which remains after such use to the natural channel of the stream. . . ." (See also *Miller & Lux* v. *Enterprise Canal & Land Co.* (1915), *supra,* 169 Cal. 415, 442; *Herminghaus* v. *Southern Calif. Edison Co.* (1926), 200 Cal. 81, 95 [252 P. 607]; *Fall River Valley Irr. Dist.* v. *Mt. Shasta Power Corp.* (1927), 202 Cal. 56, 65 [259 P. 444, 56 A.L.R. 264]; *Tulare Irr. Dist.* v. *Lindsay-Strathmore Irr. Dist.* (1935), 3 Cal.2d 489, 530-531 [45 P.2d 972]; *Meridian, Ltd.* v. *San Francisco* (1939), *supra,* 13 Cal.2d 424, 450; *Moore* v. *California Oregon Power Co.* (1943), *supra,* 22

Cal.2d 725; *Prather* v. *Hoberg* (1944), 24 Cal.2d 549, 562 [150 P.2d 405].) Further, "The use of water upon riparian lands is presumed to be riparian, and the burden of proving prescriptive rights is upon the person asserting them. [Citations.]" (*Morgan* v. *Walker* (1933), 217 Cal. 607, 615 [20 P.2d 660]; cf. *Seneca Consol. Gold Mines Co.* v. *Great Western Power Co.* (1930), *supra,* 209 Cal. 206, 217-218.) "The presumption is that in the use of water an upper riparian proprietor is exercising his riparian rights, and no title by prescription can be given, unless it is brought home to the lower riparian proprietors that the upper riparian proprietor asserts a right other than his riparian right. [Citations.]" (*Scott* v. *Fruit Growers Supply Co.* (1927), 202 Cal. 47, 52 [258 P. 1095].)

Here, there was neither proof nor finding that the upper riparian owners (defendants) were, prior to construction of their dam in 1950, using *all or any* of the water flowing in the ravine for nonriparian purposes which would give rise to prescriptive rights or that (prior to such dam construction) it was ever brought home to plaintiffs, the lower riparian owners, that defendants were either exercising or asserting a right other than their presumptive riparian right. On the contrary there is evidence that prior to construction of the dam plaintiffs secured from the ravine all the water they wanted or claimed therefrom. Further, although the trial court found that for more than five years preceding commencement (in 1951) of this action defendants had "used all the waters arising on, or flowing on or upon" their land, it also specifically found,[9] in accordance with the evidence, that such use was "for beneficial purposes, to wit, for irrigating an orchard and pasture and for watering fowl and livestock," which use, on its face, appears to be altogether in harmony with, and not adverse to, a lower owner's riparian rights. There was no showing or finding that the water was taken out of the watershed or was otherwise diverted by defendants to nonriparian uses. It therefore follows that defendants' user is not shown to be adverse to plaintiffs as lower riparian owners until such time as defendants constructed their dam in 1950 and thus artificially impeded the flow to plaintiffs' lands of water in the ravine. And inasmuch as this action was commenced in 1951, the judgment based upon defendants' claim of adverse user for the statutory period of five years is

---

[9]Finding No. VII.

patently untenable. To suggest, as do the majority, that plaintiffs are not prejudiced in the premises of the case, and "may not complain" of the judgment, is unrealistic and untenable.

However, regardless of what view we may take as to the presumptive or proved character of the relationship of the water in Grub Ravine to the land over which it naturally flows (as being riparian or otherwise), the judgment here cannot be sustained. Such judgment as entered not only denies plaintiffs the additional *prescriptive* water rights they sued to establish but also deprives them of every vestige of riparian or other rights which apparently they had enjoyed undisputed until defendants erected their dam. Plaintiffs are left by the superior court judgment with no right to have any water at any time flow in Grub Ravine to their lands. That holding rests necessarily on a finding of prescriptive title to all the water in defendants. As hereinafter developed the majority recognize a deficiency in proof, which in my view requires reversal and remand, but which the majority dispose of by modifying the judgment.

The majority hold that "The judgment entered by the trial court . . . is too broad in providing that defendants are the owners of all waters arising on, or flowing on, or upon, their land. The record discloses that the subject of this action was the right to take water from Grub Ravine during the irrigation season. The right to take water during the remainder of the year was not litigated." This holding will probably come as something of a shock to the parties litigant. Certainly the trial court imposes no such limitation on the language it used, and *reason suggests that the thing most worth litigating was the right to take and store the water during the nonirrigation season for later use during the dry season.* And it appears rather likely that the parties have been under the impression that the dam was to remain in place and operative the year around. But, it seems, this is to be a new kind of water project: one in which water (if any) is to be impounded only during the dry season, and the surplus of the wet season is to run off unhampered.

From studying the record it can be inferred that the majority conclude that the judgment is "too broad" *for the evidence to support* because even the defendant husband did not claim that before the dam was built he used *all the water*

of the watercourse *all the year*.[10] He testified that he had used all of it only during the irrigation season and admitted that during the remainder of the year the waters were permitted to flow down to plaintiffs' property[11] I had thought it obvious that the main purpose of building the dam was to enable the defendants to *impound during the nonirrigation season water to be used later during the dry season.*

It appears altogether clear to me what the defendants have attempted to do by constructing the dam. It is likewise altogether clear, under what I have thought to be a well established view of the law, that defendants have failed to prove a *prescriptive* right to all or even any of the waters they propose to impound and store. If the defendants during the irrigation seasons for five years or more *used* all the water flowing onto their land in Grub Ravine *during those seasons* then it would not seem likely that there would be any surplus water to store up behind the dam *during those same seasons* in the future. Hence, the most rational purpose of the dam would seem to be to impound and store waters flowing onto defendants' land *during the nonirrigation* seasons. But defendants do not claim to have impounded or stored Grub Ravine waters during the nonirrigation season at any time before the dam was constructed. How then do they establish prescriptive rights (dependent on proof of prior adverse user) to do that which admittedly they had never done before? As suggested at the very beginning of this dissent, do the defendants have a clear title to do that very thing? Or do they not? I do not find the answer in the majority opinion. But I do find in its loosely-defined limitation of the trial court's judgment a source of much future discontent and probable litigation. I think that this court should not undertake, as the majority do, to revise the judgment of the trial court by declaring that it "is modified . . . to limit defendants to the right to *use* all the water flowing through their land in Grub Ravine during the irrigation season." (Italics

[10] Defendant husband testified as follows: "Q. And you first became the owner of the property, as I remember, when? A. 1945. . . . Q. Now, during the period of time you have been there . . . how much of the water have you used? A. All there was. Q. After the irrigation season, is there any difference in the volume of the water? A. That is, in the ditch? Q. Yes. A. Yes; after the irrigation season is over, I don't need the water in the orchard, so I cut the ditch and let it go into the ravine."

[11] Likewise, the trial court in its memorandum of decision declares that "the testimony shows that the defendants used all of the natural spring water *during the irrigation season.*" (Italics added.)

added.) Do the findings of the trial court fail to support its judgment? If they do support it, what finding is modified by this court, and in what respect, to support its modification of the trial court's judgment? Have the majority made new or different findings to support their own judgment? What is "the irrigation season"? May defendants by staggering crops perhaps create several "irrigation" seasons? What meaning do the majority ascribe to the word "use" in the above quotation from their opinion? Is it equivalent, in their meaning, to "impound and store" above the defendants' dam? If the proscription against "use" of all the water during the nonirrigation season does not prohibit accumulation and storage during that season, does it mean that defendants may accumulate and store *all* the waters during that period but must not water their stock (if any) from it or avail themselves of it for any other useful purpose? Is it to stagnate as a breeding pool for mosquitoes? If defendants may *use part* of it, who has the superior right to how much?

It appears to me that the difficulties these contesting parties are having will not be solved until it is at the least made clear to *what extent and when*, if at all, the defendants may impound or store water. This can better be done in the superior court, and to make such determination it may well be that even the superior court would want to secure the assistance of the experts of the State of California Division of Water Resources. (*Cf. Allen* v. *California Water & Tel. Co.* (1946), 29 Cal.2d 466, 488-490 [176 P.2d 8].) Certainly on the record before us it is not a task which this court is equipped to perform. We should not undertake to modify, in this type of litigation and in the major aspects here involved, the obviously erroneous judgment which is before us; we should, rather, reverse it and remand the cause to the trial court for further proceedings. And lastly, if the majority modification of the judgment means what it appears that a trial court could properly construe it to mean—that defendants may impound water behind their dam only during the dry season—then the order that "Plaintiffs shall bear the costs of this appeal," is patently unreasonable, for they (if anyone) will be the real winners on appeal. That is, they will be, if they can afford and prevail in the further litigation which seems indicated unless the parties can agree on what their respective rights shall be.

Shenk, J., and McComb, J., concurred.